79    343
e173  ¹169

## THE STATE, *Appellant*, v. CANNON.

1. **Perjury in Returning Property for Taxation.** To sustain an an indictment against a tax-payer, under section 34 of the Revenue Law of 1872, (Wag. Stat., 1165,) for perjury in making a false affidavit to a property list for assessment, it is not necessary that the assessor should first have notified the board of equalization of the perjury, and that the board should upon examination have found the tax-payer guilty. The provisions of the statute in reference to these matters relate only to the civil liability imposed for the false return.

2. ———. Under the Revenue Law of 1872 the assessor was bound to perform his whole duty in making an assessment between the first days of August and January in each assessment year. After the latter date he had no power to administer the tax-payer's oath to his property list. An oath administered after that date was a nullity, and if false, did not constitute perjury.

*Appeal from Cape Girardeau Circuit Court.*—Hon. D. L. Hawkins, Judge.

Affirmed.

*D. H. McIntyre*, Attorney General, for the State.

*Wilson Cramer* for respondent.

Philips, C.—The defendant was indicted at the May term of the circuit court for Cape Girardeau county, for perjury, for making false affidavit to his property list for assessment.

As the indictment was quashed for insufficiency, it is necessary to present such portions of it as bear upon the questions to be decided. It charges, in substance, that the assessment was made for the year beginning August 1st, 1878, "that in the execution and performance of his (the assessor's) said duty as such assessor, the said Henry L. Caldwell (the assessor) on the 12th day of March, 1879, called at the office and place of business of" defendant, and alleges that the said affidavit was then and there administered to him by the said assessor. The indictment proceeds to set out, with detail, the facts showing wherein the affidavit was false, but it does not charge that the assessor gave the notice to the board of equalization, or that any steps were taken, or proceedings had before said board to ascertain whether the defendant was guilty of the false omission, as pointed out by section 34 of the Revenue Act. 2 Wag. Stat., p. 1165. Otherwise the indictment sufficiently charges the offense of perjury under said section.

The objections made to the indictment are, that it does not sufficiently charge the offense of perjury under section 1, page 476, Wagner's Statutes; nor is the same good as a misdemeanor, under section 4, page 476, Wagner's Statutes, and if it were, it is manifest on its face that the offense is barred by the statute of limitation. It is also objected that

the indictment is bad because it does not set out that any proceeding was first had before the board of equalization, and that this board found the defendant was guilty, and made the order for the treble assessment against him as provided in said section 34; and because it appears that at the time the assessor is alleged to have made the assessment and administered the affidavit he was not authorized under the statute to administer such oath. The circuit court sustained the objections and quashed the indictment. The State has brought the case here by appeal.

It is too plain for argument that the indictment does not sufficiently charge the offense of perjury under the gen-

1. PERJURY IN RE-
TURNING PROPERTY
FOR TAXATION. eral criminal statute; because it does not allege that the matter sworn to was material to any issue or inquiry in contemplation of that statute. It is not good as an indictment for a misdemeanor, for if it were otherwise well framed it is manifest on the face of the bill that it is barred by the statute of limitation applicable to such offense. It must be sustained, if at all, on the 34th section of the Revenue Law above referred to, which is as follows: " If any person shall, with intent to defraud, deliver to any assessor a false list of property, it shall be the duty of the assessor to give notice in writing thereof to the said county board of equalization; and the said board shall, on receiving such notice, give notice thereof to the person who shall have furnished such false list * * and shall fix a time for the hearing of such matter, and if it appear that such person is not guilty as charged, the said board shall dismiss the matter, but if it appear that such person is guilty as charged, it shall be the duty of such board of equalization to ascertain the true amount and value of all property of such person subject to taxation, and to tax the same, * * and in addition shall, by way of penalty for furnishing such false list, treble the amount of taxes thus ascertained against such person; and such person shall be required to pay such treble amount. and

shall in addition thereto be liable to be punished for perjury."

We do not think the objection well taken that before an indictment can be sustained under this section it must appear that the matter had been brought by the assessor before the board of equalization, and that it had, on investigation, found the tax-payer guilty, as therein provided. That part of the statute has reference necessarily to the civil method of ascertaining the delinquency of the person with a view to fixing upon him the treble liability. It is manifest that the legislature, in adopting this section, designed to present to the tax-payers the strongest argument that could spring from a sense of fear, by subjecting the delinquent falsifier to heavy pecuniary liability and to the pains and penalties of perjury. The words, "and shall in addition thereto be liable to be punished for perjury," create the offense of perjury out of this violation of duty of citizenship to pay taxes on his property. There could, in the nature of criminal proceedings, be no necessary connection between the action or non-action of the board of equalization and the prosecution for perjury of a criminal offense against "the peace and dignity of the State."

It is suggested in argument, by respondent's counsel, that "the false list must be made with intent to defraud, and whether such intent existed, is to be determined by the board of equalization." To what end in a criminal proceeding by the State should the board pass on this intent? Surely the learned counsel would not think it competent, on the trial of his client for perjury under this statute, for the State's attorney to read before the jury the finding of the board of equalization that his client was guilty of the fraudulent intent? Insisting as he does, that the indictment is bad because it does not charge that the board found his client guilty, he must see that the fact of the board's opinion and judgment against the accused would thus get before the jury, and the poison of the impression thus conveyed to the mind of the triers of the criminal charge, might be

impossible of eradication. Certainly no such injustice to an accused party of so grave offense as perjury could have been in the legislative mind in framing the section in question.

The remaining objection is more serious. By the law then in force the assessor was required to perform his whole duties in making the assessments between the first days of August and January of each assessment year. Wag. Stat., p. 1163, § 28. The whole provisions of this statute, considered together, clearly indicate that it was the purpose and scheme of the legislature that this officer should not tarry in his work beyond the allotted period. Ample aids in the way of deputies are provided to enable him to perform to completion his work. Ample time is allowed. He is required by section 28 to call upon the taxpayer at his office, place of business or residence, and demand a list of his property, which statement the party must swear to. The assessor, however, is not required to call again. But by section 29 he is required to leave notice and a blank list for the party to fill out, and the person to be assessed is required to make out and deliver, at such place as the assessor may designate, the sworn statement; and the assessor is to note the date of leaving the notice with the person so as to determine his liability to the penalty for failure to return his list as required within the time prescribed. Section 32 provides that if the list is not so furnished to the assessor, after he has called as aforesaid, and left the notice, the assessor may on his own view make out the list. Section 33 prescribes a double liability for the neglect to furnish the list by the party so notified. Section 38 requires the assessor, as soon as he has completed his assessment, and made out his books for the year, to return his books to the county clerk. Section 61 imperatively requires the assessor to return to the county court " on or before the 20th day of January in every year," the assessor's books, verified by his affidavit. "And upon a failure to make such returns to the court on or before the day above

mentioned, the court shall deduct twenty per cent from the amount of fees allowed to such assessor. And the clerk of the county court shall immediately make out an abstract of the assessment book * * and forward the same to the State Auditor, etc. And upon a failure to make out and forward such abstract to the auditor, on or before the 20th day of February, the clerk shall forfeit fifty per centum of the fees which may be due for making such abstract, to be deducted by the State Auditor." From all which it is plain that it was not within the contemplation of the law-makers that the assessor should, on the 9th day of March, after his books should be in the hands of the county court, and abstracted by the county clerk and forwarded to the State Auditor, be engaged in the official act of administering an oath, which is preliminary to the preparation of the books for the county court. His liability for failure to have his work completed had then attached. He himself would, on the 9th day of March, have been in default, and for the purpose of administering the oath in question touching the assessment of property for the antecedent year, he was *functus officio*. The law presumes that an officer had done his duty. And, therefore, the presumption is, that when the assessor administered the oath in question he had returned his books, and his duties were at an end, so far as administering oaths to the tax-payers is concerned.

It is suggested that as by section 53 it is provided that "no assessment shall be considered illegal on account of any informality in making the assessment, etc., or on account of the assessment not being made or completed within the time required by law." It, therefore, was contemplated by the law-makers that an assessment might be made beyond the prescribed time of January 1st. This is correct. The assessor might not have made the assessment on the lists sent him before the expiration of the year, and the legislature, to preserve to the public revenue the tax, made this exception. But the administering of the prescribed oath by the assessor is to be performed at the time of the

tax-payer's handing him the list. The extending the assessment is an after work of the assessor, and the assessment made beyond the time is validated by said section 53, and nothing else.

As the assessor was only authorized to administer the oath as an incident to his official duty, to be performed within a prescribed period, I hold that beyond that time he was not authorized to administer the oath in question, especially to make it the basis of a criminal proceeding for perjury.

The judgment of the circuit court is, therefore, affirmed. All the commissioners concur.

NORTON, J., concurred in the result.