JOHN H. KNAPP, Respondent, v. KANSAS CITY *et al.*, Appellants.

Kansas City Court of Appeals, March 7, 1892.

Municipal Corporations: KANSAS CITY: POWER TO APPROPRIATE MONEY FOR NATIONAL GUARD. Kansas City, neither under its charter nor the general militia law, has the power to appropriate money out of its treasury to assist in the maintenance of the national guard, which is a part of the organized militia force of the state. *Held, arguendo:*—

  (1) When a power is given to a city, that power may be exercised from time to time as it may require, and of the necessity or expediency of its exercise the governing body, and not the courts, is the judge.

  (2) A municipality can exercise only these powers: Those granted in express words; those necessarily or fairly implied in, or incident to, the powers expressly granted; those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable.

(3) Any fair and reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and neither the corporation nor its officers can do any act or make any contract or incur any liability not within the scope of its chartered powers, and every act in excess of such power is void.

4) These principles are derived from the nature of corporations, the mode in which they are organized and in which their affairs must be conducted.

(5) The general welfare clause of a charter, which (like that of Kansas City) follows a long list of specified powers, should not be construed so as to enlarge the powers of the city further than is necessary to carry into effect the specific grants of power.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*J. V. C. Karnes, E. L. Scarritt, Milton Moore* and *E. G. Vaughan,* for appellants.

(1) Article 3, section 1, thirty-first subdivision of the charter of Kansas City, authorizes the approbation. This section has reference to police regulations, and means to confer additional powers upon the common council. *St. Louis v. Schoenbusch,* 95 Mo. 618-22; 1 Dillon, Mun. Corp., sec. 141; *Beer Co. v. Massachusetts,.* 97 U. S. 33; 1 Dillon, Mun. Corp., secs. 144, 145, 146, 396; *State v. Sims,* 16 S. C. 486-93; *New York v. City of Buffalo,* 2 Hill, 434. (2) R. S., secs. 6943, 6926, 6978, 6979; sec. 14, article 12, of the charter. The inference properly deducible from these provisions, both charter and statute, is that it is the policy of the state to maintain an auxiliary force of militia at all suitable points, at the call of the peace officers, to and in the preservation of order and good government. (3) The charter expressly gives the council the power to provide for the city's protection, and with this follows the right of judging when it was

justified in exercising the power. *McCormack v. Patchin*, 53 Mo. 33 ; *Miller v. Anheuser*, 2 Mo. App. 168 ; *Bohle, Adm'r, v. Stannard*, 7 Mo. App. 55 ; *Siebert v. Tiffany*, 8 Mo. App. 33–7 : *Sheehan v. Martin*, 10 Mo. App. 285–9. (4) Some point is made by the pleadings that money set apart to the public works fund could not be appropriated by the council by ordinance to other purposes. We apprehend that the council had full power and authority to apply money set apart to any fund to any legitimate purpose.

*Kagy & Bremermann*, for respondent.

(1) The rule of construction with reference to general welfare clauses is well stated by Justice HOWARD, in *State v. Merrill*, 37 Maine (2 Heath) 229 ; he says, "If this were the only power given to the city to pass ordinances or by-laws, it should then be somewhat liberally construed. But, if such a general grant is given in connection with or at the end of a long list of specific powers, perhaps so extended construction might not then be due to it." The power conferred by the general welfare clause is restricted by reference to other provisions of the charter or constituent act. *City Council v. Road Co.*, 31 Ala. 76 ; *Mt. Pleasant v. Breeze*, 11 Iowa, 399, 400. The cases construing the general welfare clause, and the subject-matter with which the decisions deal, are carefully collated, pages 1187 to 1193, volume 15, American & English Encyclopedia of Law. It has been held that under this clause a municipality has no authority to levy taxes of any kind. *Commissioners of Ashville v. Means*, 7 Ired. (N. C.) L. 406 ; *In re Burnett*, 30 Ala. 461 ; Dillon, Mun. Corp. [4 Ed.] 403 ; *St. Louis v. Bell*, 96 Mo. 623. (2) It is a general and undisputed proposition that a municipal corporation possesses, and can exercise, such powers only as are expressly conferred ; those necessarily and fairly implied, or incident to the powers expressly granted, and those essential to the declared objects and powers

of the corporation, not simply convenient, but indispensable. This proposition counsel will not gainsay. It is manifest that the appropriation does not come with the express powers granted by the charter. *Claflin v. Hopkins*, 4 Gray, 502; *Stetson v. Kempton*, 13 Mass. 272; *St. Louis v. Bell*, 96 Mo. 623. (3) In conclusion, we think it may fairly be said that illegal appropriations are only too often sought to be justified under some occult power imagined to exist in the general welfare clause, or by the specious plea of the police power. When all other argument fails, the general welfare clause or the police power furnishes a convenient *dernier resort*. And we believe that this argument is nearly always resorted to in bolstering up a bad cause.

SMITH, P. J.—The common council of Kansas City passed an ordinance entitled, "An ordinance appropriating $1,500 to give aid to the third regiment, national guard of Missouri." The first section of this ordinance provided that the sum of $1,500 be, and the same is hereby, appropriated out of the board of public works department to assist in the maintenance of the third regiment, national guard of Missouri." The second section instructed the city auditor to draw a warrant on the city treasurer in favor of the colonel commanding said third regiment for the amount of the appropriation.

The plaintiff, a resident owner of real and personal property in Kansas City, subject to taxation for municipal purposes, instituted a proceeding by injunction to restrain the defendants who were, respectively, auditor, comptroller and treasurer of defendant city from drawing, countersigning and paying the warrant on the ground that the passage of the ordinance was in excess of the chartered powers of the city. The special defense interposed by the answer was: That under and by virtue of the terms of the charter of said city the mayor and common council shall, as far as practicable,

make all necessary apportionments of the revenue to be raised for the year to the expenses of the several departments, and for all public works under proper headings, *and for such other objects as it may be necessary to provide for.* They further say that, by the terms of said charter, the board of public works at the beginning of each fiscal year shall submit to the comptroller a statement of the estimated cost of said repairs and improvements during the ensuing year. But defendants say that in making these apportionments to the several departments it is not practicable to determine absolutely the amount that will be needed in each department, but that it has always been the work in managing the affairs of the city to change the funds from one department to another as the city council might determine necessary and proper in the administration of the affairs of said city, and that during this year there was an excess in the department of the board of public works, and that this appropriation was made from that department for the purpose of utilizing such excess and applying it to the general expenses of the city government, and for no other purpose. The plaintiff demurred to the answer upon the ground that the new matter therein contained did not constitute a defense. The court sustained the demurrer and awarded its injunction process against the defendants who have appealed.

The question we are obliged to decide is "whether the passage of the ordinance in question was within or without the authorized power of the city government, or in other words whether the city has the power under its charter to appropriate by ordinance money out of its treasury to assist in the maintenance of the national guard, which is a part of the organized militia force of the state. The appealing defendants contend that the power is conferred by the provisions of chapter 112, Revised Statutes. By section 6943 of that chapter this regiment is subject to the call of the mayor under certain

circumstances. Section 6926 regulates the number of the national guard that may be located at Kansas City. Section 6978 provides that all cities within the state of one hundred thousand inhabitants and over shall enlarge, add to and extend the halls, armories and headquarters used and occupied by the respective police forces thereof, and permit under such reasonable restrictions as they may impose the joint occupancy of such halls, armories and headquarters by the national guard forces of such cities and the police forces thereof. Such improvements shall be made in the same manner and paid for by the same means as though such police force had been enlarged to a number equal to the aggregate number of such national guard and police forces. It is manifest that these sections when taken together or separately do not confer upon the city the slightest authority for the passage of the ordinance. Certainly, this appropriation was not for the purpose of making the improvement contemplated by the statute. Appropriating money by the city to aid in the maintenance of the national guard is quite a different thing from appropriating it to enlarge, add to and extend the hall, armory and headquarters of the police force. That this ordinance was passed without reference to the provisions of this section of the statute is too plain for argument. The statute is wholly inapplicable and does not furnish the semblance of authority for its passage. It has nothing to do with it.

Nor has section 6979 which provides that all cities within the state are authorized to raise money by taxation or otherwise for the purpose of providing suitable armories, halls and headquarters for the national guard located therein, for the reason that it relates to those cities having a less population than the class of cities mentioned in section 6978. Manifestly it has not the slightest application to the cities of the class to which Kansas City belongs. Besides this it shows upon its face that it was not passed in conformity to the grant

of authority contained in this or any other section of the statute.

If there is any authority in the city warranting the passage of this ordinance it must be found in its charter. Section 14, article 12, of the city charter provides that the board of police commissioners may in their discretion arm and equip such force of law-abiding citizens as volunteers as they may deem proper. Such volunteer force shall perfect themselves in the use of arms and such military maneuvers as will render them efficient in assisting the regular police force in suppressing riots, etc., who shall have while in active service the authority of members of the regular police force. There is no pretense that the appropriation was made for the support of this auxiliary police force. The city militia is one force, and the national guard is another. The appropriation was to aid in the maintenance of the latter and not the former. No authority to pass the ordinance can be deduced from this section of the charter.

But it is further contended that the "general welfare" provision in the charter, subdivision 31, section 1, article 13, is broad and comprehensive enough in its terms to confer the required authority to pass the ordinance. It provides that the city shall have power to pass, publish, amend and repeal all such ordinances, rules, police regulations not inconsistent with the provisions of the charter or laws of the state, as may be expedient in maintaining the peace, order, good government, health, welfare of the city, its trade and manufactures, or that may be necessary and proper for carrying into effect the provisions of this charter. It is a well-settled law that when a power is given to a city that power may be exercised from time to time as its wants may require, and of the necessity or expediency of its exercise the governing body of the city, and not the courts, is the judge. *McCormack v. Patchin*, 53 Mo. 33; *Miller v. Anheuser*, 7 Mo. App. 168; *Bohle, Adm'r, v.*

*Stannard,* 7 Mo. App. 55; *Siebert v. Tiffany,* 8 Mo. App. 33–7; *Sheehan v. Martin,* 10 Mo. App. 285–9.

It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers *and none others : First,* those granted in express words. *Second,* those necessarily or fairly implied in or incident to the powers expressly granted. *Third,* those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. *Kansas City v. Swope,* 79 Mo. 346; *Leach v. Cargill,* 60 Mo. 316; *Kelly v. Oppenheimer,* 55 Mo. 374; Dillon on Mun. Corp., sec. 99; *Smith v. Newburn,* 70 N. C. 14; *Cook v. McCrea,* 93 Ill. 246; *Ottawa v. Crary,* 108 U. S. 110; *City of Eufaula v. McNab,* 67 Ala. 588; *Henderson v. Covington,* 14 Bush (Ky.) 312. And any fair reasonable doubt concerning the existence of the power is resolved by the courts against the corporation. *St. Louis v. Bell,* 96 Mo. 623; *Ex parte Mayor,* 78 Ala. 419; Dillon, Mun. Corp., secs. 90, 91. Neither the corporation nor its officers can do any act, or make any contract or incur any liability not within the scope of its chartered powers applicable thereto. Any act in excess of such power is void. *Kansas City v. Flannigan,* 69 Mo. 22; *Butler v. Neven,* 88 Ill. 575. These principles are derived from the nature of corporations, the mode in which they are organized and in which their affairs must be conducted. Dillon, Mun. Corp.; *Spengler v. Trowbridge,* 62 Miss. 46; *Gas Co. v. Parkersburg,* W. Va. 435. In looking through the various chartered grants of powers of the city, we find no express or implied authority to appropriate money out of the treasury for the purpose specified in the ordinance, and, hence, under the rules of construction applicable and which have just been adverted to we must conclude that the same is forbidden.

But it is contended that in the "general welfare" provision of the charter is to be found the police powers

of the city; that this provision is a sort of general reservoir, wherein are pent up a vast store of illimitable and undefined police powers, and that from this source the disputed authority may be deduced. The logic of defendant's contention is that this charter provision supplements the three classes of powers, which we have already mentioned, with a fourth; that if the power to pass any ordinance that the city may deem expedient in maintaining the peace, order, good government, health and welfare of the city or its trade and manufactures cannot be found among any of the powers we have enumerated which a city may exercise, that it may be drawn from this source. The police power has for its foundation the principles of the maxim, *Sic utere tuo ut alienum non lædas*. The extent of this power of a city thus derived is subject to, and dependent upon, the limitations of its charter. The city is a creature of the state; and, before it can exercise a particular police power, it must fairly be included in the grant of powers by its charter. Tiedeman's Police Pow., sec. 212. The exercise of any police power not within the limitations of its charter is a municipal usurpation and void. The general welfare clause of the charter of a city which follows a long list of specific powers like the one here should not be construed so as to enlarge the powers of the city further than is necessary to carry into effect the specific grants of power. Dillon, Mun. Corp., sec. 472; 15 Am. & Eng. Ency. Law, 1187; *Williams v. Augusta*, 4 Ga. 509; *Mt. Pleasant v. Blaze*, 11 Iowa, 399. The city revenue is raised by taxation upon property within its jurisdiction, and can be used only for the objects and purposes contemplated by its charter. That instrument nowhere authorizes it to aid in the support of the militia, state or federal. If we concede the existence of this power, then we must also concede the power to maintain a standing army. If this power exists, then the city may ordain money out of its treasury to "assist in the maintenance" of an industrial exposition, or a

Priest of Pallas display, or a musical jubilee for the amusement of the people, or a manufacturing establishment, or a bank, or a railway, or a bridge enterprise leading out of the city, and the like. All of these might be deemed expedient for the public welfare, yet none would contend that the charter has authorized the levy and collection of taxes for any such purposes, or that the promotion of such objects are all within its spirit and scope. Upon no principle which we have been able to discover can the passage of the ordinance be upheld as a valid exercise of power.

The maintenance of the organization of the national guard is, no doubt, dictated by a wise state policy. It is to be inferred the state has failed to make suitable provisions for the support of the Third regiment, in consequence of which it has been compelled to seek assistance of the city where located. It is, therefore, to be regretted, for the reasons already sufficiently indicated, that the required assistance has to be withheld from so useful a military organization.

The decree must be affirmed. All concur.