# CITY OF ST. LOUIS v. NATHANIEL K. KING, Appellant.

### Division Two, March 15, 1910.

1. **MUNICIPAL ORDINANCE: Affecting Public Morals.** Although an act sought to be prohibited by a city ordinance is vicious, and may properly be prohibited by the General Assembly, it is not a proper subject for municipal legislation unless the city's charter grants the power to the city.

2. ———: ———: **Express or Implied Power.** The fact that the city ordinance is designed to prevent the practice of something that is immoral, or something that the General Assembly might punish, is not sufficient to uphold it. Even though that is its design, it cannot be held to be valid unless authority in the municipal assembly to enact it is found in the charter—either in the express language or fairly and necessarily implied in the powers expressly granted or essential to the declared objects and purposes of the corporation.

3. ————: ————: **Obscene Advertisements: Doctors: Supplementing Statutes.** The city cannot enact an ordinance preventing obscene advertisements which goes further than statutes concerning objectionable advertisements enacted by the General Assembly. That is expressly prohibited by Sec. 6258, R. S. 1899, which says that cities shall restrict their ordinances to conform to "the State law upon the same subject," unless they are "otherwise authorized by some special provision of the charter;" and neither the general welfare clause of the charter authorizing the council "to pass all such ordinances, not inconsistent with the provisions of this charter or the laws of the State, as may be expedient, in maintaining the peace, good government, health and welfare of the city," nor the clause of the charter granting power to pass ordinances "to license, tax and regulate lawyers, doctors, doctresses," is a special charter provision authorizing the city to enact an ordinance preventing a physician from advertising his ability to cure venereal diseases.

4. ————: **Obscene Advertisement.** The advertisement by a physician asserting his ability to cure "contracted blood poison," set out in the statement, is not obscene in the sense used in the law, and does not contain any reference to any of the diseases denounced in the invalid ordinance he was charged with violating.

5. ————: ————: **What Is.** The word "obscene," when used in reference to an advertisement in a newspaper, means, containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall.

Appeal from St. Louis Court of Criminal Correction.
—*Hon. Hiram N. Moore,* Judge.

REVERSED.

*R. P. & C. B. Williams* for appellant; *Lehmann & Lehmann* and *E. M. Grossman* of counsel.

(1) A municipal corporation possesses and can exercise the following powers and no others. First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not

simply convenient, but indispensable. Dillon, Munic. Corp., sec. 89; Tiedemann, Mun. Corp., sec. 110; Knapp v. Kansas City, 48 Mo. App. 485; Carpenter v. Realty Co., 103 Mo. App. 480; State v. Butler, 178 Mo. 272. (2) Without express authority, either by statute or by its charter, the city of St. Louis has no authority to prohibit an act unless such act tends to disturb the public peace or is injurious to the public health. State v. Taft, 118 N. C. 1193; Bregguglia v. Vineland, 53 N. J. L. 168; Cornwallis v. Carlile, 10 Ore. 139; Minnesota v. Hammond, 40 Minn. 43; Walsh v. Union, 13 Ore. 589. (3) If an act tends to disturb the public peace or is injurious to the public health it constitutes a nuisance and can be prohibited by the municipality under the authority conferred upon it to abate nuisances; but the municipality has authority even under this broad power to prohibit only such acts as have been declared to constitute a nuisance either by the common law or by statute. The municipality has no power to declare that to be a nuisance which is not such at common law or by statute. St. Louis v. Packing Co., 141 Mo. 375; State v. Taft, 118 N. C. 1193; Carey v. Washington, Fed. Cas. 2404; Cooley, Const. Lim. (7 Ed.), p. 883; Carpenter v. Realty Co., 10 Mo. App. 480; Allison v. Richmond, 51 Mo. App. 133; State v. Mott, 61 Md. 297; In re Hong Wah, 82 Fed. 623. (4) Any exercise of the police power deduced from the "general welfare" clause in the city charter, must be essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. Cooley, Const. Lim. (7 Ed.), p. 280; Carpenter v. Realty Co., 103 Mo. App. 480; Knapp v. Kansas City, 48 Mo. App. 485; Tiedemann's Police Powers, sec. 212; Dillon, Munic. Corp., sec. 472; 15 Am. and Eng. Ency. Law, 1187; Williams v. Augusta, 4 Ga. 509; Mt. Pleasant v. Blaze, 11 Iowa 399. (5) The validity of an ordinance enacted pursuant to the police power deduced from the general welfare clause depends upon

the necessity for it in aid of the corporate purpose of promoting the peace, health and welfare of the people, the needs of the people in the city requiring peculiar legislation on account of their close interdependence due to urban life. Ordinances that undertake to regulate conduct whose effect for evil is not peculiar to the social conditions due to congestion of population have been held to be invalid. Minnesota v. Hammond, 40 Minn. 43; Walsh v. Union, 13 Ore. 589; State v. Herne, 115 N. C. 739; Bregguglia v. Vineland, 53 N. J. L. 168; Buell v. State, 45 Ark. 336; Paralee v. Camden, 49 Ark. 165; St. Louis v. Roche, 128 Mo. 541; St. Louis v. Meyer, 185 Mo. 583. (6) A municipality, without express legislative authority, has no power to go beyond the common and statutory law of the State in its legislative functions on behalf of the peace, health and good order of the town. State v. Belvidere, 44 N. J. L. 350. (7) Municipal corporations have no power to pass ordinances which shall regulate or attempt to regulate the conduct of those outside the municipal limits. Abbott, Munic. Corp., sec. 129. Nor to pass ordinances which affect the affairs of those outside the city limits. Such ordinances are held to be unreasonable, oppressive and unequal. Lamar v. Weidman, 57 Mo. App. 507. (8) Without an express declaration of the Legislature on the subject, it is for a jury under proper instructions from the court, and not for the municipal assembly, to say what constitutes obscenity. People v. Muller, 32 Hun (N. Y.) 209. (9) "No implied power to pass by-laws, and no express general grant of the power, can authorize a by-law which conflicts with the statutes of the State, or with the general principles of the common law adopted or in force in the State." Dillon, Munc. Corp., sec. 366; St. Louis v. Meyer, 185 Mo. 583; Constitution, art. 9, sec. 23; R. S. 1899, sec. 6258; Moberly v. Hoover, 93 Mo. App. 663; Kansas City v. Neal, 49 Mo. App. 72;

St. Louis v. Bentz, 11 Mo. 61; St. Louis v. Schoenbusch, 95 Mo. 618; Kansas City v. Hallett, 59 Mo. App. 160; Trenton v. Clayton, 50 Mo. App. 535.

*L. E. Walther* and *B. H. Charles* for respondent.

(1) The power to regulate doctors is expressly conferred by the charter. Charter of St. Louis, art. 3, sec. 26, clause 5. The power to prevent doctors from advertising the treatment of disgusting private and venereal diseases is included in the power to regulate doctors. The Act of 1879, Laws 1879, p. 45, which appears in the Statutes of 1899, with a slight change in the order of words, as section 5260, took away from all cities in the State any then existing power to license and tax doctors, but left unimpaired all power which had been conferred upon them to regulate doctors (otherwise than by taxing and licensing). *Expressio unius, exclusio alterius.* (2) But even if there were no express grant of authority, the city possesses such authority under the general welfare clause of its charter. Charter, art. 3, sec. 26, par. 14; St. Louis v. Schoenbusch, 95 Mo. 608; St. Louis v. Bentz, 11 Mo. 43; St. Louis v. Liessing, 190 Mo. 480; St. Louis v. Cafferata, 24 Mo. 94; State ex rel. v. Walbridge, 119 Mo. 393; St. Louis v. Vert, 84 Mo. 209; Woerner's Rev. Code of St. Louis, pp. 338, 339, 870. (3) The construction of a power must not be so strict as to defeat the evident objects and purposes of its creation. State ex rel. v. Allen, 183 Mo. 283, 291. The construction should be in accordance with the intent of the charter-framers, to be gathered from the language and object of the charter provisions, and giving that language an interpretation neither strict nor strained. St. Louis v. Herthel, 88 Mo. 130; Railroad v. Railroad, 105 Mo. 562, 575, 576. (4) The constitutional question is not properly raised, there being no citation of any section of the Constitution which has been violated. And the court will not make a search for a constitutional defect

when the defendant has not pointed it out. Hulett v. Railroad, 145 Mo. 35; State ex rel. v. Smith, 176 Mo. 44; Excelsior Springs v. Ettenson, 188 Mo. 132; Independence v. Knoepker, 205 Mo. 342; Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685; State v. Cobb, 113. Mo. App. 156. (5) The constitutional right to engage in business or to practice a profession does not imply any right to carry it on in a manner that may be dangerous to the health or good morals of the public. Thompson v. Van Lear, 92 S. W. (Ark.) 773. (a) There is no constitutional right to publish every fact or statement that may be true. State v. McKee, 73 Conn. 22. (b) And the question whether the defendant is a licensed physician under the laws of the State is immaterial. U. S. v. Clarke, 38 Fed. 735. (c) The advertisement in question was not a standard medical work, although it may have made statements of fact well known to the medical profession, and although the ailments advertised are recognized by the medical profession and scientific men. U. S. v. Clarke, 38 Fed. Rep. 735. (d) The contents of a scientific treatise on venereal diseases may become indecent and obscene when sent out broadcast to the general public. See authorities under next point. (6) The advertisement inserted by the defendant was obscene. U. S. v. Smith, 45 Fed. 476; U. S. v. Martin, 50 Fed. 918; U. S. v. Chesman, 19 Fed. 497; U. S. v. Clarke, 38 Fed. 732; Thomas on Lotteries, Frauds and Obscenity in the Mails, secs. 241-246; Commonwealth v. Landis, 8 Phil. 453; State v. McKee, 73 Conn. 22. (7) It is no objection to an ordinance that it covers the same ground as a statute. St. Louis v. Bentz, 11 Mo. 43; St. Louis v. Cafferata, 24 Mo. 94; St. Louis v. Delassus, 205 Mo. 578. (a) A defendant may even be subjected to two penalties for the same offense. St. Louis v. Cafferata, 24 Mo. 97; State v. Muir, 164 Mo. 610; State v. Gustin, 152 Mo. 108; Canton v. McDaniel, 188 Mo. 228; Lebanon v. Gordon, 99 Mo. App. 277. (b) Merely be-

because two laws are different does not make them inconsistent, and the mere fact that an ordinance differs from the general laws of the State will not invalidate it, provided it is not inconsistent therewith. St. Louis v. Cafferata, 24 Mo. 97; St. Louis v. Delassus, 205 Mo. 578. (c) There is no inconsistency between section 1447 of the Municipal Code of St. Louis of 1901 and sections 2176, 2177 and 2178 of the Revised Statutes of 1899. Ex parte Hollwedell, 74 Mo. 402; St. Louis v. Cafferata, 24 Mo. 94; State ex rel. v. Walbridge, 119 Mo. 392. Municipal corporations are organized by the State for the express purpose of legislating for local needs. And if section 1447 of the St. Louis ordinances is invalid, then the great majority of the police ordinances of all the towns and cities in the State are probably invalid, and the Legislature must be looked to for the enactment of local police regulations, the very thing which is expressly prohibited by the Constitution.

GANTT, P. J.—This was an action for the violation of an ordinance of St. Louis, known as Ordinance No. 19991, Section 1447, of the Revised Ordinances of said city, approved April 3, 1900, which provides: "Section 1447, *Obscene Newspaper Advertisements Prohibited.*—Any person who shall in the city of St. Louis advertise or cause to be advertised, in any newspaper printed or circulated in said city, or who shall print or publish any advertisement or notice in any newspaper printed or circulated as aforesaid, purporting to give information as to the treatment of venereal or private or womb diseases, or impotency, self-abuse, sterility or any disease pertaining to the genital organs, or purporting to give information from whom or where medical treatment or medicine may be procured in the above-mentioned cases, or any of them, shall be guilty of a misdemeanor and upon conviction, shall be fined not less than fifty nor more than five hundred dollars for each and every offense."

Defendant was found guilty in the police court and appealed to the St. Louis Court of Criminal Correction, in which he filed a motion to quash, on the ground that the information did not state any offense under the law or the ordinance; that the ordinance was unconstitutional (but without citing section or article of the Constitution); that it seeks to regulate matters which are not of municipal concern; that it unnecessarily prohibits the advertising of a legitimate and duly licensed business and is an unconstitutional invasion of personal liberty and imposes unnecessary restrictions upon the natural rights of physicians duly licensed by the State.

This motion was overruled and exceptions saved. The cause was then tried upon an agreed statement of facts, to-wit, that defendant was a duly licensed physician and had been practicing his profession a number of years in St. Louis; that the diseases set out in his advertisement are such as are recognized by the medical profession and their treatment is taught in the medical colleges and such diseases are commonly treated by the medical profession and in some cases the patient is cured and in some is only relieved. That the advertisement was put in the "Globe Democrat," a daily newspaper published and printed and circulated in said city and throughout the State of Missouri; that the advertisement contained the following words and matter, to-wit:

St. Louis v. King.

## "AN EXTRAORDINARY MEDICAL ANNOUNCEMENT.

*"Free Examination and Diagnosing of any Deep-Seated Disease of Man.*

"Specific Blood Poison.

"It is well that all men should know the consequences of certain. terrible diseases, the consequences if the disease is imperfectly treated. The gravest of these is specific, vital, contracted blood poison, the disease that is first manifested by a stubborn sore, later by a rash on the body, then by the breaking out of the ulcers, swelling of the glands, falling out of the hair and eyebrows. You cannot mistake these symptoms.

"If you find yourself in the clutches of blood poison don't waste time and money on hot-spring baths, specifics, mercury, potash or other mineral mixtures and poisons that will give only temporary relief.

"Dr. King's cure for blood poison, originated and perfected by him, is absolutely safe, rapid and permanent, and leaves no injurious effects. Under his treatment every external symptom soon disappears, while the blood, the tissues, the nerve fibers, the bones and the whole system are cleansed, strengthened and restored to perfect health and purity.

"Nervo-Vital Debility.

"*Cerebral*—When the mental forces are impaired.

"*Spinal*—When the spinal centers are involved and motor power is diminished.

"*Vital*—When the great sympathetic nerve system is affected and the forces that govern the organs of life are reduced by the baneful reflex effects of diseases incident to the organs of the pelvis.

"PRIVATE DISEASES.

"Newly contracted and chronic diseases are cured by Dr. King. He relieves all burning and itching and stops inflammation and unnatural weakness in twenty-four hours; he effects cures in seven days."

Upon the validity of section 1447 of the Municipal Code of St. Louis depends the correctness of the judgment of the Court of Criminal Correction, imposing upon him a fine for a violation of said ordinance.

On the part of the city it is asserted that the ordinance finds abundant authority in the charter of St. Louis, paragraph 5 of section 26 of article 3, wherein power was given to pass ordinances "to license, tax and *regulate* lawyers, *doctors,* doctresses . . . ." [Scheme and Charter of St. Louis, 2 R. S. 1879, p. 1586.] It is conceded that this power to license and tax doctors of medicine was nullified by an Act of the General Assembly of this State of March 6, 1879 (Laws 1879, p. 45), now known as section 5260, Revised Statutes 1899, but it is insisted that the power to regulate doctors was not affected by the said act of the Legislature, and under the grant of authority to regulate, it was competent for the municipal assembly to pass this ordinance. Moreover, it is insisted by counsel for the city that authority to enact this ordinance can be found in the "general welfare clause" of the charter, *viz.*: "to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures and enforce the same by fines and penalties not exceeding $500," etc. [Par. 14, sec. 26, art. 3, Scheme and Charter of St. Louis, 1876.]

On the other hand, defendant maintains that the only power of attorney, so to speak, the city had to pass this ordinance, was this general welfare clause and that in the ascertainment of the powers of the city

certain principles must be accepted, to-wit, that municipal corporations possess and can only exercise such powers as are granted in express words or those necessarily incident to or implied by the powers expressly granted; they are creatures of the law, established for special or local purposes and their corporate acts must not only be authorized by their charters but their acts must be done by such officials or agents in such manner as their charters direct. [Dillon on Municipal Corporations (4 Ed.), p. 145; City of Nevada v. Eddy, 123 Mo. 557.]

It is asserted by counsel for the city that it has the inherent police power to protect public morals, and that this advertisement flagrantly offends against public morals and decency. In the solution of this controversy it is well that we keep in view certain principles which must be regarded as settled in this jurisdiction.

In State ex rel. v. Telephone Company, 189 Mo. 83, it was said by this court In Banc, in the examination of the corporate powers of Kansas City under its special charter to regulate telephone tolls: "It is not every power that may be essayed to be conferred on the city by such a charter that is of the same force and effect as if it were conferred by an act of the General Assembly, because the Constitution does not confer on the city the right, in framing its charter, to assume all the powers that the State may exercise within the city limits, but only powers incident to its municipality. Yet the Legislature may, if it sees fit, confer on the city powers not necessary or incident to the city government. There are governmental powers the exercise of which is essential to the happiness and well being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the State may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved."

In Knapp v. Kansas City, 48 Mo. App. 485, the doctrine is tersely stated to be: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and none others: First, those granted in express words. Second, those necessarily or fairly implied in or incident to the powers expressly granted. Third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. [Kansas City v. Swope, 79 Mo. 446; Leach v. Cargill, 60 Mo. 316; Kiley v. Oppenheimer, 55 Mo. 374.] And any fair reasonable doubt concerning the existence of the power is resolved by the courts against the corporation. [St. Louis v. Bell, 96 Mo. 623; Ex parte Mayor, 78 Ala. 419; Dillon, Mun. Corp., secs. 90 and 91.] But it is contended that in the 'general welfare' provision of the charter are to be found the police powers of the city; that this provision is a sort of general reservoir, wherein are pent up a vast store of illimitable and undefined police powers, and that from this source the disputed authority may be deduced. The logic of defendant's contention is that this charter provision supplements the three classes of powers, which we have already mentioned, with a fourth; that if the power to pass any ordinance that the city may deem expedient in maintaining the peace, order, good government, health and welfare of the city or its trade and manufactures cannot be found among any of the powers we have enumerated which a city may exercise, it may be drawn from this source. The police power has for its foundation the principles of the maxim, *Sic utere tuo ut alienum non laedas*. The extent of this power of a city thus derived is subject to, and dependent upon, the limitations of its charter. The city is a creature of the State; and, before it can exercise a particular police power, it must fairly be included in the grant of powers by its charter. [Tiedeman's Police Pow., sec. 212.] The exercise of any

police power not within the limitations of its charter is a municipal usurpation and void. The general welfare clause of the charter of a city which follows a long list of specific powers like the one here, should not be construed so as to enlarge the powers of the city further than is necessary to carry into effect the specific grants of power." [15 Am. and Eng. Ency. Law, 1187.]

In St. Louis v. Packing Company, 141 Mo. 375, it was ruled that under the charter power to declare and abate nuisances it was not competent for the city to declare that a nuisance, which is not so in fact, either at common law or by statute. In a number of well-considered cases, it has been ruled that the city's power was only over such acts as may affect the public peace, decency and good order and does not authorize punishment for private conduct however reprehensible it may be in the matter of morals. Thus in State v. Horne, 115 N. C. 739, an ordinance prohibiting the use of profane language in the town was held invalid, but, added the court, it would be otherwise if the ordinance prohibited the use of such language as amounted to boisterous or disorderly conduct, or to a disturbance of the peace. In State of Minn. v. Hammond, 40 Minn. 43, the Supreme Court held an ordinance void which imposed a penalty upon any person who committed an act of indecency within the limits of the city, saying, the city's power was only over such acts "as may affect the public peace, decency and good order, and does not authorize punishment for private conduct however reprehensible it may be in the matter of morals." To a like effect are the cases of Bregguglia v. Vineland, 53 N. J. L. 168; State v. Buell, 45 Ark. 336; Paralee v. Camden, 49 Ark. 165. In Walsh v. The City of Union, 13 Oregon 589, though the city was authorized to "prevent and restrain any riot, noise, disturbance or disorderly assemblage in any street, house or place in the city," the court held that an ordinance which

imposes a penalty on any person "who shall draw any dangerous or deadly weapon upon the person of another" was invalid.

From these cases we deduce this principle, that although an act sought to be prohibited by city ordinance is vicious and properly within the power of a State Legislature to consider, it is not a proper subject for municipal legislation, unless the charter grants the power to the municipality. In the consideration of the validity or non-validity of this section 1447 of the municipal code, we are not called upon to consider the question of medical ethics, nor yet a question of private individual morals, but a question as to power and the scope of the grant of power by the State to the city of St. Louis, and unless authority can be found either in the express language of the charter or necessarily or fairly implied in the powers expressly granted or essential to the declared objects and purposes of the corporation, then the mere fact that it is aimed to prevent the practice of something that is immoral, or even which a State Legislature might punish, will not sustain the ordinance. The advertisement in question does not fall within the condemnation of sections 2176, 2177, and 2178, which have announced the legislative policy of this State with respect to objectionable advertisements and it is quite evident that the ordinance in this case goes further than this legislative enactment and does not fall within the express authority given by the charter and is not indispensably necessary to the powers therein expressly granted. In this connection section 6258, Revised Statutes 1899, adds much to the proper settlement of the validity of this ordinance. By that section it is provided: "Any municipal corporation in this State, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the State, unless otherwise prescribed or authorized

by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the State law upon the same subject." And it is provided in the Constitution, section 23, article 9, that the charter and amendments thereto of the city of St. Louis shall always be in harmony with and subject to the Constitution and laws of Missouri. Under sections 2176, 2177 and 2178, we have laws enacted for the promotion of the morals of the people by prohibiting obscene and licentious publications and those of indecent and scandalous character. And the State in these sections has defined its policy by a general law, but this ordinance upon this same subject has gone further and enlarged the statute.

Nor can it be said that this ordinance is of a peculiarly local or municipal character. The vice or practice at which it is aimed is not necessarily and naturally connected with a congested city population. The conduct sought to be prohibited is no more injurious because committed in a city than if committed in a country district. Whatever may be said as to the indelicacy of this publication, after careful consideration, we have been unable to find any warrant for the ordinance making it an offense, either in the charter or by any necessarily implied incident to those powers. Nor can we believe that it is necessary to carry into effect the specific grants of power in the charter. While, as was said in Carpenter v. The Reliance Realty Company, 103 Mo. App. 480, the police powers of a city ought to be construed with reasonable liberality, before an ordinance is enforced which will change the fundamental theory of the law so that the change shall be sensibly felt in the law's practical effect; its validity should appear from some statute delegating the power to it, not be implied merely because the result would be wholesome.

But applying the ordinance itself to the advertisement in this case, it is obvious that the advertisement does not contain any reference to many of the diseases denounced in the ordinance itself. As to whether the advertisement is obscene, we think it should be measured by the established judicial precedents as to what constitutes obscenity. In United States v. Moore, 129 Fed. 159, Judge PHILIPS, quoting, says: "The word 'obscene' when used, as in the statute, to describe the character of a book, pamphlet or paper means containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall, whose minds are open to such immoral influences." In People v. Muller, 96 N. Y. 411, the Court of Appeals said: "The test of an obscene book was stated in Regina v. Hicklin, L. R. 3 Q. B. 369, to be whether the tendency of the matter charged as obscenity is to deprave or corrupt those whose minds are open to such immoral influences and who might come into contact with it." It is clear that some of the diseases are not covered by the ordinance and while some of them may be included therein, the reference to them is couched in language in and of itself not offensive. It is significant that though we have a statute aimed directly at obscene publication, no attempt has been made to prosecute the newspaper publishing this advertisement, but the effort is made to prevent its repetition by invoking this ordinance against the physician who resorts to the advertisement. It is conceded by the city that however indelicate it is in a physician to advertise his business, it is a matter with which the common law and no statute in this State has ever undertaken to interfere. The contention is that the defendant has advertised in such a way as to shock the public morals and lower the moral tone of the community. However opposed to a proper code of ethics and indelicate as it may be for a physician to

advertise, if we accept the test of obscenity laid down in Regina v. Hicklin and followed in numerous cases in this country, we are unable to come to the conclusion that this advertisement is an invitation to any person to participate in any immorality or to corrupt or deprave the minds of those into whose hands the publication might fall.    The learned counsel for the city have cited us to numerous cases, the majority of which are in the Federal decisions interpreting the laws in regard to obscene publications passing through the mails and as to the meaning of the statutes denouncing this character of pamphlets, books, etc., but counsel have not been able to put their hands upon any decision of a court of last resort, nor have we been able to find one, in which a city ordinance of the character of the one under which this prosecution is waged has been upheld as a valid exercise of the general police power of a city.    We think this ordinance cannot find support in the charter provision in regard to the regulation of doctors nor in the general welfare clause of the charter of St. Louis.

Applying the well-established doctrine in this State, we are constrained to the opinion that this ordinance must fail because the power to enact it is not conferred in the charter and is not necessarily incident to any power that is expressly granted in the charter, and that the ordinance itself is not in harmony with the statutory law of this State on this subject, but has endeavored to enlarge the powers of the city further than is necessary to carry into effect the specific grants of power.    There are other propositions presented with great clearness by counsel, but the conclusion we have reached disposes of the controlling points in the case, and hence it is not necessary to discuss others.    For the reasons given we hold the ordinance invalid, and the judgment of the Court of Criminal Correction must therefore be and is reversed. *Burgess* and *Fox, JJ.,* concur.