THE KROGER GROCERY & BAKING COMPANY, a Corporation, Plaintiff, and GREAT ATLANTIC & PACIFIC TEA COMPANY of America, a Corporation; UNITED CIGAR STORES COMPANY of America, a Corporation; JOHN R. THOMPSON COMPANY, a Corporation; WHITE CASTLE SYSTEM OF EATING HOUSES CORPORATION, a Corporation; F. W. WOOLWORTH COMPANY, a Corporation; S. S. KRESGE COMPANY, a Corporation; WOLFF-WILSON DRUG COMPANY, a Corporation; SCOTT STORES, Incorporated, a Corporation; MAVRAKOS CANDY COMPANY, a Corporation; CITY ICE & FUEL COMPANY, a Corporation; MOSS & LOWENHAUPT CIGAR COMPANY, a Corporation; WALGREEN DRUG STORES, a Corporation; and THRIFTY DRUG STORES, a Corporation, Intervenors, v. CITY OF ST. LOUIS, a Municipal Corporation, and FRED A. RENICK, License Collector of the City of St. Louis, Appellants.—106 S. W. (2d) 435.

Division Two, June 21, 1937.

*Edgar H. Wayman, John G. Burkhardt* and *Andrew J. Reis* for appellants.

64

*Nichols, Morrill, Wood, Marx & Ginter, Rassieur & Rassieur* and *Alfred C. Wilson* for The Kroger Grocery & Baking Company, The Great Atlantic & Pacific Tea Company and United Cigar Stores Company of America.

66

*Clarence T. Case, David W. Voyles* and *George L. Stemmler* for White Castle System of Eating Houses, F. W. Woolworth Company, S. S. Kresge Company, Scott Stores, Inc., John R. Thompson Company and Mavrakos Candy Company; *Louis Mayer, Esq.,* for Wolff-Wilson Drug Company.

*Salkey & Jones* for Walgreen Drug Stores, Inc., and Thrifty Drug Stores, Inc.

BOHLING, C.—This case presents the validity and constitutionality, State and Federal, of a chain store license fee ordinance of the city of St. Louis.

Upon the overruling of the city's demurrers to the original and intervening petitions of the merchants, the city refused to plead further and appealed from the judgment enjoining the enforcement of said ordinance.

Ordinance No. 39619 of the city of St. Louis, the ordinance in question, briefly stated, makes it unlawful for any person, etc., to operate branch or chain stores within the city of St. Louis without a license, defines "branch or chain" stores and "branch or chain store" operators, and exacts from such operators graduated multiple stores annual license fees, exempting therefrom persons, etc., whose principal business is the sale of petroleum products from bulk plants or service stations. The provisions of said ordinance, in so far as deemed essential to a determination of this appeal, title omitted, follow:

"Section One. From and after the first day of July, nineteen hundred thirty-two, it shall be unlawful for any person, firm, corporation, copartnership or association, either foreign or domestic, to establish, open, maintain, or operate any branch or chain store within this City without having obtained a license so to do from the License Collector of the City of St. Louis.

"Section Two. The term 'branch or chain store,' as used in this ordinance, shall be construed to mean and include any store or stores, or any mercantile establishment or establishments in excess of one which are owned, operated, maintained or controlled by the same person, firm, or corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail.

"Section Three. Every person, firm, corporation, copartnership, or association establishing, opening, maintaining or operating within this City, under the same general management, supervision, ownership or control, two or more stores or mercantile establishments where any goods, wares, or merchandise are sold or offered for sale at retail, shall be deemed a branch or chain store operator, and for such stores established, opened, maintained or operated in excess of one shall pay the license fees hereinafter prescribed, for the privilege of establishing, opening, maintaining or operating each such store or mercantile establishment in excess of one.

"The license fees herein prescribed shall, except as herein otherwise provided, be paid annually, and shall be, in addition to the license fees and *ad valorem* taxes prescribed in the merchants' license ordinance of this City now in effect, or as the same may hereafter be amended. The license fees to be paid by operators of branch or chain stores shall be as follows:

"One. Upon two stores or more, but not to exceed five stores, the annual license fee shall be twenty-five dollars for each such store in excess of one.

"Two. Upon six stores or more, but not to exceed ten stores, the annual license fee shall be fifty dollars for each such store in excess of five.

"Three. Upon eleven stores or more, but not to exceed fifteen stores, the annual license fee shall be one hundred dollars for each such store in excess of ten.

"Four. Upon sixteen stores or more, but not to exceed twenty stores, the annual license fee shall be one hundred fifty dollars for each such store in excess of fifteen.

"Five. Upon twenty-one stores or more, but not to exceed twenty-five stores, the annual license fee shall be two hundred dollars for each such store in excess of twenty.

"Six. Upon each store in excess of twenty-five, the annual license fee shall be two hundred fifty dollars for each such store in excess of twenty-five.

"The license fees herein imposed shall not apply to persons, firms, corporations, copartnerships, or associations whose principal business is that of the sale of petroleum products from bulk plants or service stations; provided, however, that said business shall be exempt from the provisions hereof only so long as the same are taxed for

municipal purposes under the existing gasoline sales tax ordinance or amendments thereto.''

Other sections of the ordinance cover the application for license (Sec. 4), its examination by the license collector, etc., the issuance of the license and its display (Sec. 5), the expiration of the license on June 30 following date of issuance, etc. (Sec. 6), issuance of licenses subsequent to January 1st for one-half the full rate (Sec. 7), non-assignability of the license (Sec. 8), the forestalling of possible efforts to evade the license fees through schemes of business organization, corporate or otherwise (Sec. 9), penalties (Sec. 10), saving (Sec. 11) and emergency (Sec. 12) clauses.

The petitioner and intervenors are the following corporations: The Kroger Grocery & Baking Company; Great Atlantic and Pacific Tea Company of America; United Cigar Stores Company of America; John R. Thompson Company; White Castle System of Eating Houses Corp.; F. W. Woolworth Company; S. S. Kresge Company; Wolff-Wilson Drug Company; Scott Stores, Inc.; Mavrakos Candy Company; City Ice & Fuel Company; Moss & Lowenhaupt Cigar Company; Walgreen Drug Stores; Thrifty Drug Stores, Inc. Each operates more than one store in the city of St. Louis, and the corporate names sufficiently indicate the nature of the several businesses transacted.

Numerous attacks are made against the validity, constitutional and otherwise, of Ordinance No. 39619 in the petition (embracing more than sixty pages of the printed abstract) of the Kroger Grocery & Baking Company, a corporation, instituting the action as a class suit on behalf of said plaintiff and others similarly situated, and the petitions of the intervenors, some of said intervenors presenting additional issues. We deem it nonessential to state, much more nonessential to discuss, the many contentions presented, and shall limit this review to such issue or issues as may rule the case.

Ordinance No. 39619 makes no attempt to regulate the business of the merchants. It seeks only the exaction of a license for the privilege of conducting business through chain stores. The license issues upon the payment of the fee. Upon its face it is a revenue, not a regulatory, measure; and an exercise of the taxing power, a high governmental function, *in invitum* in nature. [Kansas City v. J. I. Case T. M. Co., 337 Mo. 913, 919(1), 87 S. W. (2d) 195, 198(2); City of Ozark v. Hammond, 329 Mo. 1118, 1122, 49 S. W. (2d) 129, 131(1); Automobile Gasoline Co. v. St. Louis, 326 Mo. 435, 441 (I), 32 S. W. (2d) 281, 282(I); Viquesney v. Kansas City, 305 Mo. 488, 497(II), 266 S. W. 700, 702(4); State ex rel. v. Ashbrook, 154 Mo. 375, 385, 55 S. W. 627, 629.] For instance. As we read the abstract of the intervening petition of the White Castle corporation, it pays an annual merchant's license fee, based

upon a seating capacity of less than twenty in each of its sixteen restaurants, under the merchants' license ordinance of the city of St. Louis, of $10 each, or $160, and under said Ordinance No. 39619 would pay an annual chain store license fee of $1,000 additional, a total of $1160, for the privilege of serving food to the citizens of St. Louis at sixteen different locations in said city. Clearly, Ordinance No. 39619 is a revenue measure.

It is settled that any exercise by the city of St. Louis, although operating under a home-rule charter, of the high governmental function here under review must be in harmony with and subject to the Constitution and laws of the State. [See Missouri Constitution, Art. IX, Secs. 20, 22, 23 and 25; Art. X, Secs. 1 and 10.] The authorities are reviewed and the subject is developed historically in Kansas City v. J. I. Case T. M. Co., 337 Mo. 913, 920-928, 87 S. W. (2d) 195, 198(3-12). The city of St. Louis, under Article IX, Sections 20-25, of the Missouri Constitution was authorized to extend its corporate boundaries and frame and adopt a charter for its government; but such charter, as well as amendments thereto, was required, in so far as here involved, under said Sections 20, 22 and 23, to "be in harmony with and subject to the Constitution and laws of Missouri." [Consult Art. IX, Secs. 16 and 17, Ibid.] Said Section 25 provides: "Notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State." Sections 1 and 10, respectively, of Article X of the Constitution of Missouri provide: "The taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes." "The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Paraphrasing the conclusion in State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 895, 2 S. W. (2d) 713, 721, a banc case ruling upon the authority of the General Assembly over the city of St. Louis in the matter of establishing and maintaining public libraries by taxation: If Sections 20, 22, 23, and 25 of Article IX, mean anything, they mean "that St. Louis, in the matter of imposing taxes is subject to the same control as other cities are." [See, also, among others, Ex parte Tarling (Mo.), 241 S. W. 929, 933(4); St. Louis v. Dreisoener, 243 Mo. 217, 223, 147 S. W. 998, 1000(2); St. Louis v. Kaime, 180 Mo. 309, 322, 79 S. W. 140, 143; St. Louis v. Atlantic Q. & C. Co., 244 Mo. 479, 484, 148 S. W. 948, 950; St. Louis v. King, 226 Mo. 334, 350, 126 S. W. 495, 499.]

72

The issues turn on, not should or could but, do the laws of the State of Missouri authorize the city of St. Louis to exact the tax here involved. We are not concerned with the motives attending the enactment of the ordinance. It is the tendency of commerce to magnify the importance of the quantity of trade; of society (we use the term in its broad sense) to magnify the importance of life, liberty, human happiness and the quality of men. Motives attending the enactment of legislation in the furtherance of either objective may be most creditable and when on proposed legislation the two interests conflict, it is for the legislative branch of government, acting within its proper scope, not the judiciary, to choose between the conflicting values and determine the policy of the law. We deal only with the power of the city of St. Louis, not the expediency, wisdom or justness of the license imposed.

Ordinance No. 39619 graduates the license fee according to the number of stores. The merchants contend any graduated license fees exacted by the city of St. Louis must be graduated in proportion to annual sales, relying on Section 7596, Revised Statutes 1929 (Mo. Stat. Ann., p. 6012). We think this issue ruled by the full and learned discussion of HYDE, C., in Kansas City v. J. I. Case T. M. Co., 337 Mo. 913, 928 et seq., 87 S. W. (2d) 195, 204 et seq., a recent decision of this court en banc holding an ordinance of the city of Kansas City exacting a license, graduated according to floor space occupied instead of in proportion to annual sales, of implement dealers beyond the authority conferred upon cities having more than three hundred thousand inhabitants.

Section 7596, supra, as originally enacted constituted that portion of Section 1 set out in italics infra of an Act of the Thirtieth General Assembly [Laws 1879, p. 141] entitled: "An act classifying property for the purpose of taxation." Said section read:

"Section 1. For the purpose of State, county and municipal taxation, merchandise held by merchants, and the raw material, merchandise, finished products, tools, machinery, and appliances used or kept on hand by manufacturers, shall constitute a class separate and distinct by itself. [1] And all cities in this State, having a population of over three hundred thousand inhabitants, are authorized to levy for local purposes, a less *ad valorem* rate of taxation, than that levied by them on real estate or other property for the same purpose; and said reduction may, from time to time, be arranged to apply on both or either the tax rate for payments of valid indebtedness, or the tax rate for city purposes; [2] and *all such cities, for city and local purposes, are hereby authorized to license, tax and regulate the occupation of merchants and manufacturers; and may graduate the amount of annual license imposed upon a merchant or manufacturer in proportion to the sales made by such merchant or*

*manufacturer during the year next preceding any fixed date.* [3]"
Sections 2 and 3 respectively, of said act carried emergency and repeal clauses. The portions of said section immediately preceding the numerals "1," "2" and "3," respectively, appear in the Revised Statutes of 1879 as Sections 6909, 6910, and 6911, of Article XI, "Taxation of Merchants and Manufacturers," of Chapter 145, "Of the Assessment and Collection of the Revenue;" and are now, respectively, Section 9748, Revised Statutes 1929 (Mo. Stat. Ann., p. 7869, of Art. 1), "What Property Taxable and Where," of Chapter 59, "Taxation and Revenue," and Sections 7595 and 7596, Revised Statutes 1929 (Mo. Stat. Ann., p. 6012, of Art. 26), "Laws Applicable to Cities having Five Hundred Thousand Inhabitants or over," of Chapter 38, "Municipal Corporations." This division and shifting by the revision committees did not have the force and effect of changing the law. [The history of the sections is developed in the Kansas City case, supra, 337 Mo. l. c. 929, 87 S. W. (2d) l. c. 204.]

Summarizing the reasons underlying Kansas City v. J. I. Case T. M. Co., supra, on the instant issue, they are to the effect, in so far as material here, that said Act of 1879 conferred a permissive, not mandatory, power upon certain municipalities to impose a graduated license upon merchants; but (considering the word "may" in said clause authorizing a graduated license as equivalent to "must" or "shall" [Ibid, 337 Mo. l. c. 931(8), 87 S. W. (2d) l. c. 205 (15-17)] any attempt to exercise the authority there conferred to exact graduated license fees must be exercised in conformity with the authority delegated and graduated in proportion to the annual sales [Ibid, 337 Mo. l. c. 930(7), 87 S. W. (2d) l. c. 205(13, 14), and authorities cited; Keane v. Strodtman (Banc), 323 Mo. 161, 167(II), 18 S. W. (2d) 896, 898(II) (quoting Dougherty v. Excelsior Springs, 110 Mo. App. 623, 626, 85 S. W. 112, 113, to the effect that when special powers are conferred, or special methods are prescribed for the exercise of a power, the exercise of such power is within the *maxim expressio unius est exclusio alterius,* and "forbids and renders nugatory the doing of the thing specified except in the particular way pointed out"); State ex rel. v. Clifford, 228 Mo. 194, 207, 128 S. W. 755, 758].

It follows that the city of St. Louis transcended the scope of the authority conferred upon it by imposing, under Ordinance No. 39619, license fees, graduated according to the number of stores operated, on merchants operating more than one store, said license not being graduated in proportion to the annual sales made by the merchants subject to the license.

There is little occasion for mentioning cases from this or other jurisdictions not ruled by like statutory or constitutional provisions. Automobile Gasoline Company v. St. Louis (Div. 2), 326 Mo. 435, 32 S. W. (2d) 281; Viquesney v. Kansas City (Banc), 305 Mo. 488,

74

266 S. W. 700; Ex parte Asotsky (Banc), 319 Mo. 810, 5 S. W. (2d) 22, Missouri cases stressed by the city, are sufficiently differentiated from the instant case by the observations in Kansas City v. J. I. Case T. M. Co., 337 Mo. l. c. 392, 87 S. W. (2d) l. c. 206(21). See also the comment on the Viquesney case in Siemens v. Shreeve (Banc), 317 Mo. 736, 744, 296 S. W. 415, 418(11), evidently made in connection with the statement in the Viquesney case (305 Mo. l. c. 501, 266 S. W. l. c. 704) that no contention was presented that the charter provision authorizing a division of the various occupations etc., into different classes "was unconstitutional" or "in conflict with Sec. 8702, R. S. 1919;" although the Asotsky case, 319 Mo. l. c. 819, 5 S. W. (2d) l. c. 25, states that the Viquesney case held the gasoline sales license ordinance "did not violate Section 8702, Revised Statutes 1919."

What we have said disposes of the appeal and renders any discussion of other interesting issues presented in the able briefs of counsel for the respective litigants unnecessary.

The judgment is affirmed. *Cooley* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.