**Stanley R. GRANT, Respondent,**

v.

**KANSAS CITY, Missouri, et al., Appellants.**

**No. 53913.**

Supreme Court of Missouri,
En Banc.

July 19, 1968.

Rehearing Denied Sept. 9, 1968.

John J. Fallon, James M. Jenkins, Kansas City, for respondent, Fallon, Guffey & Jenkins, Kansas City, of counsel.

Herbert C. Hoffman, City Counselor, Richard W. Mason, Jr., Assoc. City Counselor, Kansas City, for appellants, John J. Cosgrove, Kansas City, of counsel.

Lewis Czech, City Atty., Berkeley, Wm. A. Richter, City Atty., Bridgeton, Jim Coonce, City Atty., Columbia, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, and Shulamith Simon, Acting City Atty., Florissant, Dennis Davidson, City Atty., Hannibal, Wm. H. Burden, City Atty., Joplin, Paul F. O'Konski, Acting City Atty., St. Joseph, Don Busch, City Atty., Springfield, John J. Morris, City Atty., University City, A. A. Michenfelder, City Atty., Webster Groves, for amici curiae, urging reversal on behalf of City of Berkeley it and others.

HOLMAN, Chief Justice.

In this class action plaintiff, for himself and all other citizens, residents, and taxpayers of Kansas City, Missouri, sought to enjoin the defendants from holding a special election to amend the city's charter by adding a section which would authorize the city to increase its earnings tax by one-half of one percent per year. The defendants are the city, its mayor, and the members of its city council, together with certain election officials. The trial court entered a judgment for plaintiff. The city and its officials have appealed. We have jurisdiction because the construction of provisions of the constitution of this state are involved.

Officials of the city gave testimony in the trial court indicating that they were gravely concerned because the city did not have the financial ability to properly provide for the protection of the public health, safety, and welfare. While we are sympathetic with the city officials in their efforts to solve the city's financial problems, we will not detail that evidence because it does not appear relevant to the legal issues here presented.

In 1963 the General Assembly passed an enabling act (applicable to cities in a certain population classification, including Kansas City) which authorized the submission of a charter amendment authorizing the levy, by ordinance, of a city earnings tax. See § 92.210 et seq., 7 V.A.M.S. (pocket parts), Laws of Missouri 1963, p. 152. Section 92.210 provides that "[a]ny constitutional charter city in this state which now has or may hereafter acquire a population of more than four hundred fifty thousand but less than seven hundred thousand inhabitants, according to the last federal decennial census, is hereby authorized to levy and collect, by ordinance for general revenue purposes, an earnings tax on the salaries, wages, commissions and other compensation earned by its residents; on the salaries, wages, commissions and other compensation earned by non-

residents of the city for work done or services performed or rendered in the city; on the net profits of associations, businesses or other activities conducted by residents; on the net profits of associations, businesses or other activities conducted in the city by nonresidents; and on the net profits earned by all corporations as the result of work done or services performed or rendered and business or other activities conducted in the city." Section 92.230 reads as follows: "The tax on salaries, wages, commissions and other compensation of individuals, subject to tax, and on the net profits of earnings of associations, businesses or other activities, and corporations, subject to tax, shall not be in excess of one-half of one percent a year."

On December 17, 1963, the voters approved a charter amendment which authorized the city to levy an earnings tax of one-half of one percent. That tax was thereafter levied and has since been collected by the city. The ordinance here involved would submit to the voters a charter amendment which would authorize the levy of an additional one-half of one percent, a total of one percent.

In the trial court, and here, defendants contend that the city is authorized to submit the charter amendment, and, if approved, to levy the additional tax, by §§ 19 and 20, Art. VI, Constitution of Missouri 1945, V.A.M.S. Those sections apply to special charter cities. Section 19 provides that "[a]ny city having more than 10,000 inhabitants may frame and adopt a charter for its own government, consistent with and subject to the constitution and laws of the state, in the following manner: * * *" Section 20 sets out the procedure for amending a charter. The position of appellants is more specifically stated in their brief as follows: "Since these grants of power relative to home-rule charter municipalities are directly delegated by the people of the state, no additional grant is necessary from the General Assembly in order for the people of Kansas City to amend their charter to authorize its legislative body to levy and collect an earnings and profits tax. Such power flows directly from the Constitution and need not be delegated by nor approved by the General Assembly through enabling legislation."

Plaintiff has cited § 1 of Art. X, Constitution of 1945, which provides that "[t]he taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdivisions under power granted to them by the general assembly for county, municipal and other corporate purposes." His primary contention, however, is that charter amendments must be consistent with the laws of the state and, since § 92.230, supra, provides that the tax "shall not be in excess of one-half of one percent a year," the proposed amendment conflicts with said section and is accordingly invalid.

The contentions of the parties call for a construction of the constitutional limitation upon the powers of special charter cities by reason of the words "consistent with and subject to the constitution and laws of the state." Those exact words were included in predecessor § 16, Art. IX, Const. of 1875. In the ensuing period of almost a century many cases have come to this court which involved the powers of special charter cities, both as to their charter provisions and ordinances. An interesting discussion of many of those decisions appears in the article, "Municipal Home Rule in Missouri," 1953 Washington U.Law Quarterly, p. 385.

The constitutional grant of power in § 19 and the concurrent limitation thereon are often hard to reconcile. That was graphically described in Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415, 417, when the court stated that "[b]oth the grant and the limitation must be given effect. If the limitation is construed to mean that the charter must be consistent with every provision of the Constitution and every law of the state, then the limi-

tation simply nullifies the grant. City of Kansas City v. Marsh Oil Co., 140 Mo. 458, l.c. 470, 41 S.W. 943. On the other hand, to treat the charter as 'out of, and beyond, all legislative influence,' would be to nullify the express constitutional limitation. State ex rel. Kansas City v. Field, 99 Mo. 352, l.c. 355, 12 S.W. 802. Either construction would be extreme and unthinkable. * * * The above constitutional limitation was construed by Judge Gantt, speaking for this court in banc in Kansas City v. Bacon, 147 Mo. 259, l.c. 272, 48 S.W. 860, 863: ' "Consistent with" does not import exact conformity, but means substantial harmony with the principles of the Constitution and the general laws of the state.' "

Certainly the provision that charters must be consistent with the constitution and laws of the state means that some sort of restriction is placed upon the home rule grant to special charter cities. While the decisions construing that restriction may not be entirely in harmony, one rule has been definitely established, i. e., "that as to its form of organization and as to its private, local corporate functions, and the manner of exercising them, the constitutional provision grants to the people of the cities designated part of the legislative power of the state for the purpose of determining such matters and incorporating them in their charter as they see fit, free from the control of the General Assembly. When matters of this nature are adopted in a charter, as prescribed by a Constitution, such charter provisions have the force and effect of a statute of the Legislature and can only be declared invalid for the same reason, namely, if they violate constitutional limitations or prohibitions. City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943. On the other hand, in matters which are governmental functions, the state retains control and, as to such matters, the provisions of a city charter, although adopted under the constitutional provision therefor; must be and remain consistent with and subject to the statutes of the state

enacted by the Legislature." Kansas City, Mo. v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, 202. "It is an essential element of all constitutional provisions establishing the principle of municipal home rule that the Constitution and general laws of the state shall continue in force within the municipalities which have framed their own charters, and that the power of the municipality to legislate shall be confined to municipal affairs. Such charters do not supersede or prevent the enactment of state laws of general concern, in which the state has a sovereign interest; and where the provisions of such charters, or of legislation enacted thereunder, conflict with the general laws of this character, the state laws will prevail." 37 Am.Jur., Municipal Corporations, § 106, p. 715. See also Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74 [5], Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498 [10], and 62 C.J.S., Municipal Corporations § 187, p. 345.

As indicated by the decisions it is sometimes difficult to determine whether a function should be classified as governmental or corporate. It is generally held, however, that the power to tax is a governmental function inherent in the State. Such is indicated by the provisions of § 1, Art. X, supra. Also, see Kansas City, Mo. v. J. I. Case Threshing Machine Co., supra [10]; Coleman v. Kansas City, supra [6]. And, we have specifically stated that an earnings tax is a matter of governmental concern. "As earlier stated in the Carpenter case (State ex rel. Carpenter v. City of St. Louis) in italics 318 Mo. [870] l.c. 892, 2 S.W.2d [713] l.c. 719, 'There are many matters local to the city, requiring governmental regulation, which are foreign to the scope of municipal government.' The impact of the 'earnings' tax contemplated by the ordinance under adjudication here would fall on non-residents of the City who might be residents of any and every county and city of the State—and other States. And if there be now or hereafter other cities in the State

with charters containing a provision as broad as Sec. 1, art. 1, Par. 1 of the St. Louis charter, they could retaliate with a corresponding ordinance which would equally bind citizens of St. Louis and all other like cities. Certainly such ordinances would not be matters of purely local concern, from the viewpoint of the State government." Carter Carburetor Corp. v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438, 444.

■ Since, as we have stated, an earnings tax is not a matter of purely local concern the conclusion is inescapable that the charter provision authorizing an earnings tax must be consistent with the laws of the state. The applicable state statute provides that Kansas City may levy an earnings tax not in excess of one-half of one percent a year. The ordinance in question would submit a charter amendment which would authorize a total earnings tax of one percent per year. Such an amendment would violate both the statute and the constitution and hence must be held invalid.

We are supported in our conclusion by a number of tax cases which we consider to be specifically applicable on the facts. In Ex parte Tarling, Mo.Sup., 241 S.W. 929, St. Louis, by authority of its charter, passed an ordinance providing for a license tax of $10 for each taxicab. A state statute authorized cities to impose a license tax on vehicles not exceeding one-half of the amount of the state license. Since the $10 city license fee was more than one half of the state license fee it was not in harmony with the state law, as required by the constitution, and was accordingly held to be invalid. In Kroger Grocery & Baking Co. v. City of St. Louis, 341 Mo. 62, 106 S.W.2d 435, 111 A.L.R. 589, the ordinance provided a license tax for revenue graduated according to the number of stores. The state statute authorized a license tax graduated according to the amount of annual sales. It was held that the ordinance was not in harmony with the state statute and hence was invalid. In

Kansas City, Mo. v. J. I. Case Threshing Machine Co., supra, the ordinance imposed an annual revenue license fee upon implement dealers graduated according to floor space. The state statute authorized a license fee graduated according to annual sales. The ordinance was held to be invalid.

As we have indicated, appellants contend that §§ 19 and 20, Art. VI, of the Constitution authorized the city to amend its charter to levy an earnings tax and that the enabling statute should be disregarded because it was not necessary in order for the city to adopt a charter amendment imposing such a tax. They cite cases such as Frogge, Siemens, and Carter Carburetor (all supra) which held that ordinances were invalid where not authorized by city charter. Appellants rely on statements appearing in various opinions, such as the following excerpt from the Frogge case: "In a sense it is true, as plaintiff city contends, that the general power to impose some kind of taxes is implied from the grant to a city of the right to frame a charter for its government. This follows of necessity because no municipal functions can be carried on without revenue from some source." 176 S.W.2d l.c. 502. We are unable to see, however, how the actual holdings in the foregoing cases support appellants' contentions.

■ We will discuss two other cases relied on by appellants. City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943, holds that the power of eminent domain is a matter of municipal regulation and therefore the procedure specified in the charter would supersede the general statutes where the two conflict. This decision is in harmony with the general rule heretofore stated. McConnell v. City of Kansas City, Mo.Sup., 282 S.W.2d 518, is a case in which the question presented was the constitutionality of the Sawyers Act (requiring cities to bring declaratory judgment actions in annexation cases) as applied to Kansas City. It was held that since charter cities annex by charter

amendment, and since the Sawyers Act conflicted with certain provisions of § 20, Art. VI, of the Constitution, the act was declared to be unconstitutional. We do not think the situation in McConnell is sufficiently analogous to that in the instant case to lend support to appellants' contentions. We have read all of the other cases cited by appellants and amici curiae and do not find them persuasive in view of the direct authorities we rely upon.

It is our intention to restrict this decision to the actual issues presented. We have not considered the question as to whether a special charter city would have the authority to amend its charter to provide for an earnings tax in the absence of an applicable conflicting state statute on the subject.

The judgment is affirmed.

HENLEY, FINCH, DONNELLY and STORCKMAN, JJ., concur.

EAGER, J., concurs in result in separate concurring opinion filed.

SEILER, J., concurs in result in separate concurring opinion filed.

## OPINION CONCURRING IN RESULT

EAGER, Judge.

I concur in the result of the principal opinion but file this separate opinion to note my serious doubt of what I deem to be the implication therein that the earnings tax of Kansas City is a matter of governmental or state-wide concern. I am not convinced that the matter quoted from the case of Carter Carburetor Corp. v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438, 444, correctly states the law and I feel that the question should be open for interpretation and decision when it arises. I am inclined to the view that such a tax is a local matter which may be regulated by a city charter, but at this point I am not so unhesitatingly

convinced of that position as is Judge Seiler.

For the reasons already pointed out so clearly in the other opinions, namely, the enactment of §§ 92.210–92.300, RSMo (1967 Cum.Supp.), which expressly prohibit such a tax in excess of ½ of 1%, I agree that any such charter amendment as the city now proposes to submit would be inconsistent with the "laws of the state" as now existing and, therefore, in conflict with § 19 of Art. 6 of the Constitution which is the very source of the city's charter power.

## CONCURRING OPINION

SEILER, Judge.

I concur in the result and in the last paragraph of the opinion. I do not believe the enabling act, §§ 92.210–92.300 RSMo 1967, was necessary in the first place, but said act was adopted by the legislature upon the urging of Kansas City, became effective October 13, 1963, and contained the section limiting the tax to one-half of one percent a year, § 92.230. Kansas City did not amend its charter to authorize an earnings tax until December 17, 1963. At that date and at all times since the law of the state with respect to all constitutional charter cities in the 450,000–700,000 population class forbade the earnings tax to exceed one-half of one percent. Therefore, there is no denying the fact that the proposed charter amendment is not consistent with the existing general law on the subject. If it were not for § 92.230 antedating the proposed amendment, I would have no hesitancy in holding that Kansas City could increase the earnings tax by amending its charter so to provide. Whether the result of the present case should be different if Kansas City had originally included in its charter, or by an earlier amendment, authority to enact an earnings tax and then the legislature had attempted to set a ceiling on the tax, or to reduce it, or abolish it entirely, is an interesting question not before us.