STATE EX REL. THE PEOPLE'S MOTORBUS COMPANY OF ST. LOUIS, a
Corporation, v. JAMES G. BLAINE, Judge of City Court No. 1, CITY
OF ST. LOUIS, a Municipal Corporation; WILLIAM E. DUFFY, City
Marshal of St. Louis, and JULIUS T. MUENCH, City Counselor
of St. Louis.—58 S. W. (2d) 975.

Court en Banc, March 21, 1933.

*Carter, Jones & Turney* for relator.

584

*Julius T. Muench* and *Oliver Senti* for respondents.

FRANK, J.—Original proceedings in prohibition to prohibit respondent, James G. Blaine, Judge of City Court No. 1 of the city of St. Louis, from proceeding with the trial of a cause pending in said court, wherein the relator, The People's Motorbus Company, is charged with storing gasoline and other motor fuel on which a storage tax is levied by Ordinance 39354 of said city, and refusing to file with the comptroller of said city a sworn statement of the amount of gasoline and other motor fuel so stored, as provided in said ordinance.

Relator seeks to prohibit respondent, judge, from proceeding further with said cause on the ground that the ordinance upon which the charge is based is void.

The pertinent provisions of the ordinance read as follows:

"Section 1157F. No person, firm or corporation shall store gasoline or other motor fuel in quantities in excess of ten gallons without first having obtained a license therefor from the license collector.

"Section 1157G. Every person, firm or corporation defined in Section 1157F, shall pay the license collector a quarterly annual fee on the 16th day of January, April, July and October of each year for the period of three months, ending respectively on the last days of the preceding December, March, June and September, the amount of said quarterly license to be determined at a sum equal to one cent for every gallon of gasoline, or other motor fuel stored by such person,

firm or corporation during the preceding period of three months and ending as aforesaid, provided, however, that if a license fee of one cent per gallon upon the storing, sale or transportation, shall have been paid by a previous storer, vender or transporter, such payment shall be sufficient, the intention being that the fee shall be paid but once.

"Section 1157H. Every person, firm or corporation storing gasoline, as defined in section 1157F, shall keep an accurate record of all receipts of gasoline and other motor fuel, showing the number of gallons received and on or before the fifteenth day of each of the months last aforesaid, shall file with the Comptroller of the City of St. Louis, a sworn statement of the number of gallons of gasoline or other motor fuel oil stored . . ."

Sections 1157 I and J provide penalties for refusal to pay the license fee or make the sworn statement provided in the sections of the ordinance above quoted.

Sections 1153 and 1154 of the ordinance provides that every person, firm or corporation engaged in the business of selling and transporting gasoline or motor fuel shall obtain a license from the city, and pay a quarterly license fee equal to one cent for every gallon sold by such person, firm or corporation. Section 1157-a provides that no person, firm or corporation shall engage in the business of selling gasline or motor fuel without first obtaining a license so to do, but providing that this section of the ordinance shall not apply to the sale of any gasoline on which the seller or any other person, firm or corporation is required to pay a license sales tax of one cent per gallon by Sections 1153 and 1154. Other parts of the ordinance provide penalties for failure to comply with above provisions.

The facts alleged in the pleadings show that relator, The People's Motorbus Company, is engaged in the business of transporting passengers for hire from place to place over the streets of the city of St. Louis by means of large motorbusses. In the prosecution of its business it consumes large quantities of gasoline and other motor fuel. This gasoline is purchased by relator in interstate commerce in carload lots and is unloaded and stored in underground tanks in the city of St. Louis and is thereafter removed from said tanks at such times and in such quantities as relator needs for the operation of its busses in the prosecution of its transportation business. None of it is sold or delivered to any other person, firm or corporation. Other corporations in the city of St. Louis purchase, store and use gasoline in their business in a manner similar to that followed by relator. In addition to the gasoline storage tax the city imposes upon relator (1) a property tax on the value of all property it owns, including gasoline on hand and in storage on the date fixed for the assessment, (2) a license fee of twenty-five dollars for each motor bus oper-

ated by it, (3) automobile city license tax on each bus operated, based on the horsepower of the bus, and (4) a tax of three per cent of relator's total receipts from the transportation of passengers.

Relator challenges the validity of the gasoline storage tax.

█ Paragraph I of Section 1 of Article I of the charter of the city of St. Louis provides that the city shall have power *"to assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation."* There can be no question but what this language of the charter is sufficiently broad to authorize the city to levy any kind of tax which is not inhibited by some other provision of the charter or by some constitutional or statutory provision. The charter of the city must be consistent with and subject to the Constitution and laws of the State. [Ex parte Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 415.]

█ It will be observed that the ordinances of the city levy a tax of one cent per gallon on the privilege of selling gasoline, and a like tax on the privilege of storing gasoline, with the provisions that the payment of a sales tax exonerates from liability for the storage tax. The practical operation and effect of the ordinances levying both the sale and storage tax is to impose a tax on the use of gasoline in the city. It is apparent that gasoline bought in large quantities in interstate commerce and stored in the city for the owner's future use would not be subject to the sales tax because no sale of such gasoline takes place in the city. If the city was powerless to levy a storage tax on such gasoline, the owners thereof, although using the gasoline in the city, would escape payment of their portion of the revenue "designed to be derived from the use of gasoline" in the city. Concerning the practical operation and effect of a statute levying a tax on the privilege of selling gasoline, where it is not complemented by a statute levying a tax on the privilege of storing gasoline, the Supreme Court of Florida in the case of Jerome H. Sheip Co. v. Amos, 130 So. 699, said:

"The tax imposed upon that privilege is impotent when gasoline is purchased in interstate commerce and stored in this State by the owner for his own future use. Since there is no sale which the State could tax, gasoline so purchased and stored, though mingled with the common mass of property in this State, and though enjoying the protection afforded by the laws of this State, would escape payment of its portion of the public revenues *designed to be derived from the use of gasoline in this State."* (Italics ours.)

The statutes of Florida also levied a tax on the privilege of storing gasoline. In upholding the statute levying the storage tax, the court held that such statute was complementary to the statute levying the sales tax in effectuating the State's public policy as to the *revenue to be derived from the use of gasoline in the State.* (Italics ours.) Of the statute levying the storage tax the court further said:

"While passed primarily for revenue purposes, and to forestall evasion of the sales tax (see Texas Co. v. Brown, 258 U. S. 466, 481, 42 Sup. Ct. 375, 66 L. Ed. 721, 728), the statute is also regulatory in effect. The storage of gasoline in large quantities is inimical to public safety. If no financial advantage can be gained by storing it, one of the most substantial inducements for storing it is removed. The result is accomplished by imposing a storage tax equivalent to the sales tax, thus tending to curb the practice of storing it. See Foster & Creighton v. Graham, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971."

In the case of Texas Co. v. Brown, 258 U. S. 466, 66 L. Ed. 721, the Supreme Court of the United States construed a statute of the State of Georgia making it a misdemeanor to sell, keep for sale, *or in storage,* crude or fine petroleum, naphtha, kerosene, etc., without having the same inspected and approved by an authorized inspector, and providing for the payment of an inspection fee. In upholding the validity of this statute, the court considered not merely the terms of the statute, but its practical operation and effect, and held that it was both a regulatory and a revenue measure, *and amounted to an indirect tax upon the use of gasoline by the consumer.*

In 1923 the State of Tennessee enacted a statute imposing a tax on dealers in gasoline, and measured it by the quantity of gasoline sold or distributed by the dealer. In 1925 this statute was amended by adding thereto the following:

" 'The tax imposed by this act shall apply to persons, firms, or corporations, dealers or distributors, storing any of the products mentioned in this act, and distributing the same, or allowing the same to be withdrawn from storage, whether such withdrawal be for sale or other use; provided that "sellers" of gasoline and such substitutes thereof and distillates paying the tax herein provided may continue to pay the same computed and paid on the basis of their sales as hereinbefore required and stores and distributors shall compute and pay this tax on the basis of their withdrawals or distributions.' "

A company that bought gasoline in interstate commerce and stored it in the State of Tennessee, not for sale, but for its own use, questioned the validity of the amended statute in the case of Foster & Creighton Co. v. Graham, 285 S. W. 570, 47 A. L. R. 975. In disposing of the attack made on the validity of the amended statute, that court said:

"We think the effect of the amendatory act of 1925, when properly interpreted, is to reach gasoline that is stored and thereafter withdrawn and used without being sold by any person, etc.

"Under the act of 1923, a large consumer of gasoline, desiring to escape the tax levied by the act, could do so by buying his gasoline

in quantities, say in tank lots, storing it, thereafter withdrawing it, and using it as needed. In such case there would be no intrastate sale or distribution within the meaning of said act, and such consumer would not, therefore, be subject to tax.

"It was manifestly the purpose of the Legislature in passing the amendatory act to cut off this avenue through which large consumers might evade the tax.

"We think the act, when properly interpreted, not only applies to distributors and dealers in gasoline, but applies to consumers who purchase gasoline in interstate commerce and store it, and thereafter distribute the same or allow the same to be withdrawn from storage, whether such withdrawal be for sale or other use."

See, also, Bowman v. Continental Oil Company, 256 U. S. 642, 65 L. Ed. 1139, which upholds the validity of a statute levying a tax upon the sale and *use* of gasoline.

Relator contends that the cases to which we have called attention are not in point because neither of them hold that the mere storage of gasoline by the owner is subject to an excise tax.

We do not agree with relator's interpretation of these cases. In the case last above cited, Bowman v. Continental Oil Company, the Supreme Court of the United States recognized the right of the taxing authorities to impose an excise tax on the use of gasoline. The other three cases, Sheip Co. v. Amos, Texas Co. v. Brown and Foster & Creighton Co. v. Graham, deal with the validity of laws imposing both a sales and a storage tax, and hold that such laws, in practical operation and effect, amount to the imposition of a tax on the *use* of gasoline. The theory of this holding is that while the sales tax is paid by the seller in the first instance, it is added to the sale price and finally paid by the user of the gasoline. Gasoline imported and stored, not for sale, but for use of the owner is not subject to the sales tax. The storage tax imposed on such gasoline is, like the sales tax, paid by the user of the gasoline. The practical effect of such a law is to require every user of gasoline to pay a tax in proportion to the amount consumed. Texas Co. v. Brown, and Foster & Creighton Co. v. Graham, supra.

Relator contends that the storage tax in question is a property tax, and being a property tax, it is invalid because it violates Section 4 of Article X of the Constitution of Missouri which requires that all property subject to taxation shall be assessed in proportion to its value.

Our view of the character of this tax is well stated in Jerome H. Sheip Co. v. Amos, 130 So. 699, as follows:

"It therefore becomes apparent that the tax is not upon the gasoline itself as property, but is an excise upon the privilege of storing gasoline; hence 'a tax upon licenses' as expressly sanctioned by the Constitution, art. 9, sec. 5. See Amos v. Matthews (Fla.), 126 So.

590

308; Amos v. Gunn, 84 Fla. 285, 94 So. 615. The total amount of the tax paid is directly determined by the extent to which a privilege is exercised. See 26 R. C. L. 35, 236. The tax has none of the attributes of an *ad valorem* tax. It is not measured by value and is not laid directly upon the property itself, nor does the tax fall upon the owner merely because of ownership. The value of gasoline may fluctuate as it will, but the amount per gallon of the tax remains constant. The tax is payable regardless of whether the storer is also the owner. It is an excise imposed directly by the Legislature upon a taxable privilege.''

Relator next contends that the tax violates Section 3 of Article X of the Constitution which requires that all taxes shall be uniform on the same class of subjects.

We do not agree with this contention. Since the purpose of the ordinance is to derive revenue from the use of gasoline, and since large consumers who import and store gasoline for their own use cannot be required to pay the sales tax, no good reason appears why all sellers of gasoline should not be placed in one class and subjected to the payment of a sales tax, and all storers who store gasoline upon which a sales tax has not been paid and cannot be exacted, placed in another class and subjected to the payment of a storage tax equal in amount to the sales tax. Such a classification is based on reasonable grounds, and the tax imposed bears alike upon every one within the class, and requires every user of gasoline to pay his portion of the public revenue sought to be derived from the use of gasoline in the city.

Relator next contends that if the storage tax is held to be an excise or license tax, then it is invalid because it attempts to impose a tax upon a business, avocation, pursuit or calling not specifically named as taxable in the Charter of the City of St. Louis.

This contention is based on Section 7287, Revised Statutes 1929. That section reads as follows:

''No municipal corporation in this State shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specifically named as taxable in the charter of such municipal corporation, or unless such power is conferred by statute.''

This statute applies to all municipal corporations in the State and prohibits them from imposing a *license* tax upon any business, avocation, pursuit or calling, which is not specifically named as taxable in the charter of such cities. [Keane v. Strodtman, 323 Mo. 165, 18 S. W. (2d) 896; Ex parte Seimens v. Shreeve, 317 Mo. 736, 296 S. W. 415.] Storing of gasoline by the owner for his own use is not named in the Charter of the City of St. Louis as a business, avocation, pursuit or calling upon which the city is authorized to impose

a license tax, and for that reason relator contends that the city was not authorized to impose a tax on the storage of gasoline.

The statute invoked by relator deals with occupation taxes only, and prohibits the levy of a license tax on any occupation not specifically named as taxable in the charter of the city. This statute has no application to this case for the reason that the storage tax here involved is not an occupation tax. The ordinance imposes the sales tax upon every person, firm or corporation engaging in the business of selling gasoline. Clearly the sales tax is an occupation tax. The language of the ordinance makes it so. Note the difference in the language of the ordinance imposing the storage tax. It provides that no person, firm or corporation shall store gasoline or other motor fuel in quantities in excess of ten gallons without paying a storage tax, etc. The language of the ordinance makes all persons who store gasoline in excess of ten gallons, liable for the storage tax regardless of whether they are engaged in the business of storing gasoline as an occupation, pursuit or calling. This tax is not an occupation tax but is an excise upon the taxable privilege of storing gasoline. [Foster & Creighton Co. v. Graham (Tenn.), 285 S. W. 570, 47 A. L. R. 971; Jerome H. Sheip v. Amos, 130 So. 699.] 26 Ruling Case Law, page 236, defines an excise tax as a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.

The final contention is that as relator is required to pay a license tax of three per cent of its total receipts from the transportation of passengers, the imposition of a further tax of one cent per gallon on the gasoline used in the conduct of its transportation business, violates the provisions of the city charter which permits the imposition of but one license tax on such business.

There would be merit in this contention if the city had imposed two license taxes upon relator's business, but such is not the case. The charge of three per cent of the total receipts from the transportation of passengers is a license tax upon the business or occupation in which relator is engaged. The storage tax of one cent per gallon on the gasoline stored by relator is not a license tax on its business or occupation, but is an excise upon the privilege of storing gasoline. A merchant who uses automobiles in delivering goods to his customers, cannot escape the payment of automobile license fees and gasoline taxes on the ground that he has paid his merchant's license tax. The same rule applies to relator.

For the reasons stated, the provisional rule in prohibition heretofore issued should be discharged. It is so ordered. All concur.