CARTER CARBURETOR CORPORATION V. THE CITY OF ST. LOUIS and R. E. GRUNER, Collector of the Revenue of the CITY OF ST. LOUIS, Appellants.—No. 40353.—203 S. W. (2d) 438.

Court en Banc, June 9, 1947.

Rehearing Denied, July 5, 1947.

*George L. Stemmler,* City Counselor, *James V. Frank,* First Associate City Counselor, *Albert Miller,* and *Forrest G. Ferris, Jr.,* Associate City Counselors, for appellants.

648

*Wm. R. Gentry* for respondent; *George B. Logan, J. Terrell Vaughan* and *Henry C. Lowenhaupt* of counsel.

650

■ ELLISON, J.—This is an appeal by the defendants, City of St. Louis and its Collector of Revenue, from an adverse judgment of the circuit court of that city in a suit for a declaratory judgment and injunction brought under Sec. 1127, R. S. 1939-Mo. R. S. A., by the plaintiff-respondent, a Missouri corporation located in St. Louis. Respondent challenges on constitutional grounds the validity of a recently passed Ordinance 43783 of the City, which imposes an "Earnings Tax" on the residents thereof, and in part on certain non-residents.

■ The constitutional provisions invoked by respondent are Sec's 1 and 2, Art. X, Const. Mo. 1945, the first of which is a single sentence broadly confides "the taxing power" to the General Assembly, and authorizes *it* to grant that power to political subdivisions for municipal purposes, among others. Sec. 2 provides "The power to tax shall not be surrendered, suspended or contracted away *except*[1] as authorized by this Constitution." Respondent maintains these are mere enabling provisions;[2] that the General Assembly has never enacted a statute authorizing the City to impose the tax, which is undisputed that the Constitution has not otherwise sanctioned it; and that the

---

[1]Italics in quotations are ours unless otherwise noted.

[2]While they have not been cited by either side, it may be noted as an aid to construction that there are two new provisions in the Constitution of 1945, bearing on the *kind* of taxes that may be imposed. The last sentence in the first paragraph of Sec. 4, Art. X, dealing with the classification of taxable property, provides (italics ours): "Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or *any other* taxes of the *same or different types*." And the last paragraph of Sec. 11, Art. X provides (italics ours): "Nothing in this Constitution shall prevent the enactment of any *general* law permitting any county or other political subdivision to levy taxes other than ad valorem taxes for its essential purposes."

ordinance is so vague and capricious as to be unenforceable and denies due process of law.

On the other hand the appellants maintain that statutory authority for the imposition of the earnings tax is unnecessary because it is purely a matter of local or municipal, as distinguished from State, concern; and that for those purposes the City had the "unfettered" power to impose the tax under its special charter adopted by vote of its people in 1914 pursuant to Sec's 20-25, Art. IX, Const. Mo. 1875. That preexisting charter was expressly recognized and continued in force by Sec. 31, Art. VI, Const. Mo. 1945. Hence, appellants insist the sanction for the tax found in Art. 1, Sec. 1, Par. 1 of that charter is a direct constitutional grant, and has the force and effect of a statute. Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 925(2), 87 S. W. (2d) 195, 201(5); Wiget v. St. Louis, 337 Mo. 799, 805-6(4), 85 S. W. (2d) 1038, 1042(6).

To that respondent answers that the earnings tax is *not* purely a matter of local concern; and that the cited section of the charter is fully as vague as the constitutional provision first referred to above, and equally needs the support of a statute or a specific provision in the charter. Said Art. 1, Sec. 1, Par 1 of the charter, on which appellants rely, merely authorizes the City: "To assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation." And the next paragraph empowers the City "to adopt such classifications of the subjects and objects of taxation as may not be contrary to law." There are no other charter provisions authorizing the imposition of taxes, except *license* taxes; Art. 1, Sec. 1, Pars. 23, 24, and Art. XX. Even the power to impose ad valorem taxes is merely assumed by collateral references thereto in the charter.[3] However, Art. 1, Sec. 2 provides:

"The enumeration of particular powers in this charter is not exclusive of others, nor restrictive of general words or phrases ▮▮▮▮ granting powers, nor shall a grant or failure to grant power in this article impair a power granted in any other part of this charter; and whether powers, objects, or purposes are expressed conjunctively or disjunctively they shall be construed so as to permit the city to exer-

---

[3] Art. XV, Sec's 8-18, 20; Art. XXV, Sec. 2. Such taxes were authorized by Art. V, Sec. 1, Charter of 1876, R. S. Mo. 1879, p. 1599, which permitted taxation on "all subjects and objects of taxation, *and all property within the city made taxable by law for state purposes.*" This provision was implemented by various statutes: Sec's. 6707, 6772, 6783, 6863, 6864, R. S. Mo. 1879; Laws Mo. 1887, p. 241. After the foregoing italicized words were stricken from Art. 1, Sec. 1, Par. 1 of the Charter of 1914, supra, many such statutes were continued or enacted: Sec's 12792, 12877, 12917, 12927 XIV, 12940, 12942, 12943, 12960, R. S. Mo. 1919. And by Laws Mo. 1921, p. 666, now Sec. 7752, R. S. 1939-Mo. R. S. A., the right of cities of the population of St. Louis to levy ad valorem taxes on realty and personalty, within specified limits, was specifically declared.

cise freely any one or more such powers as to any one or more such objects for any one or more such purposes.''

The ordinance contains nine sections, of which Sec. 8 declares that if any sentence, clause or section or any part of the ordinance is for any reason held to be unconstitutional, illegal or invalid, that fact shall not affect or impair the remaining provisions of the ordinance, since it would have been adopted by the Board of Aldermen even if the condemned part had been omitted. Sec. 9 is an emergency clause. Sec. 1 contains only definitions, among which the word ''Associations'' includes ''any . . . form of unincorporated enterprise owned by two or more persons.'' ''Business'' means any ''enterprise, activity, profession or other undertaking of any nature conducted for profit or ordinarily conducted for profit . . .'' ''Corporations'' covers domestic, foreign, Federal and alien corporations. An ''employer'' is any entity that employs anyone on the earning basis taxed. ''Person'' includes ''Every natural person, association, business, corporation or fiduciary.'' And ''residents'' are such ''persons'' as reside or are located within the City.

Sec's 3 to 8 cover the making of ''returns'' of earnings to the Collector, much like income tax returns, and generally implement the ordinance, providing for the collection of the tax at the source from employers in the City, along with the imposition of interest and penalties for delinquency, and making specified violations thereof misdemeanors. Sec. 2 of the ordinance is the section directly assailed here. The City's brief correctly summarizes it as imposing a tax of $\frac{1}{4}\%$ for general revenue purposes, from and after July 31, 1946, on (italics ours):

(a) The gross salaries, wages, commissions and other compensation earned by *residents* of the City of St. Louis;

(b) The gross salaries, wages, commissions and other compensation earned by *non-residents* of the City of St. Louis, for work done or services performed or rendered *in* the City of St. Louis;

(c) The net profits earned (by) associations, businesses, or other activities conducted by *residents*;

(d) The net profits of associations, business, or other activities conducted *in* the City of St. Louis by *non-residents*;

(e) That *portion* of the net profits earned by *all* corporations as a result of work done or services performed or rendered, and business or other activities conducted, *in* the City of St. Louis.

The tax obviously is not a license tax under the police power, for the ordinance is not in any sense regulatory, and the tax is imposed expressly ''for general revenue purposes.'' Appellants also say it is not a use tax or an excise tax, but just a ''tax''. We do not agree. In our opinion it is a species of income or excise tax. However, it is limited to earnings from work and services, and does not include other kinds of income such as interest on investments, rents, dividends, capi-

tal gains and the like. Clauses (a) and (b) cover any worker for compensation, including the professions. An actor, architect, artist, dentist, engineer, journalist, lawyer, physician or surgeon, for instance though residing outside the City, State or Nation, would be taxed on any work or services he had performed in the City, without deduction for expenses. And the tax would cover all the gross earnings of persons solely employed in the City, though living elsewhere.

Taxes of this type are not unprecedented. Many citizens have been familiar since 1913 with Federal income taxes under the Sixteenth Amendment, Const. U. S. And it is a matter of history that they were intermittently levied as excise taxes between 1861 and 1894. See: 26 U. S. C. A., Sec. 1, p. 12. Our first State income tax was imposed by Laws Mo. 1917, p. 524, three years after the adoption of the present charter of St. Louis in 1914. So-called earnings taxes have been imposed in other ▮▮▮ states.[4] In fact the ordinance here involved was modeled from ordinances of the cities of Philadelphia and Toledo.[5]

The appellants picture an emergent situation in St. Louis calling for the tax. They allege the City's expenses for 1947 will exceed $44,000,000, this being over $4,000,000 above its anticipated revenues. Yet it must maintain its various municipal services, such as those for general administration, fire, police, traffic, health, educational and eleemosynary purposes. The poor it has alway with it. But since the City has been separated from St. Louis County by its special charters, many of the well-to-do who make their living in the City have established their residences in St. Louis or other bordering counties or across the Mississippi River in Illinois. It is to reach these persons, mainly, that the tax is imposed. Respondent answers with some asperity that the fault lay with the "elder statesmen" who divorced the City from St. Louis county by the charters of 1876 and 1914 without anticipating the growth of the City, and thereby forced thousands of people outside and "closed the door in their faces."

▮▮ In support of its contention that the ordinance is void because it lacks specific constitutional, statutory or charter sanction, respondent strongly relies on the Frogge case,[6] decided by this court en banc in 1944. Appellants disagree with respondent on the proper interpretation of that decision, and it is crucial. Therefore we review it at some length. It involved a "compensating use tax" imposed by Kansas City, Missouri, on all property purchased for use in the City, upon which the State sales tax had not been paid, the purpose being to

[4]61 C. J., sec. 41, p. 113; sec. 82, p. 145; sec. 115, p. 165; sec. 256, p. 267; sec. 841, p. 683.
[5]Dole v. Philadelphia, 337 Pa. St. 375, 11 Atl. (2d) 163; Butcher v. Philadelphia, 333 Pa. 497, 6 Atl. (2d) 298; State ex rel. Zielonka v. Carrell, 99 Oh. St. 220, 124 N. E. 134; Cincinnati v. A. T. & T. Co., 112 Oh. St. 493, 147 N. E. 806; Firestone v. Cambridge, 113 Am. St. 57, 148 N. E. 470.
[6]Kansas City v. Frogge, 352 Mo. 233, 176 S. W. (2d) 498.

equalize the tax burden on that property with the burden on similar property used in the City on which the sales tax had been paid.

Kansas City, like St. Louis, has a special charter, adopted by its electors in 1925 under direct Constitutional and statutory authorization, Sec. 16, Art. IX, Const. Mo. 1875; Laws Mo. 1921 (1 Ex. Sess.) p. 110. And Art. 1, Sec. 1, Par. 1 of that charter broadly permits the City: "To assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation . . ." This, it will be noted, is exactly the same as the corresponding provision in the St. Louis charter. Likewise, Art. 1, Sec. 3 of the Kansas City charter provides: "The enumeration of any particular power granted in this charter shall not be construed to limit or impair any general grant of power in this charter contained." This section is similar to Art. 1, Sec. 2 of the St. Louis charter, quoted earlier in this opinion, though not so full or detailed. Art. 1, Sec. 1, Pars. 31, 46, 57-60 of the Kansas City charter specifically cover license taxes and perhaps to some extent excise taxes in connection therewith,[7] and Art. XII deals with ad valorem taxes.

As we read the Frogge opinion it held the following. It started with the thesis that the power to tax is an extraordinary one, which does not inhere in municipal corporations, and will not be implied unless the implication be necessary and the grant unmistakable.[8] Thence it reasoned as follows. A constitutional grant of power to a city to frame and adopt a special charter, is a grant to the *people* of that city. But the city's people may not deem it desirable to delegate to the city in its charter *all* of the powers they could have granted under the constitutional sanction. Therefore, the City's power to impose taxes is *not* the uncontrolled power to impose *any* tax *except* as limited by its charter, or general law. On the contrary, it is only the power to impose such taxes as have been *authorized* by the General Assembly in a general law, or by the people in its charter—if not in conflict with the Constitution. Then the opinion went on to hold that neither any general statute nor any of the detailed provisions of the charter authorized Kansas City to impose the compensating use tax provided for in the ordinance; and that the power could not be implied.[9]

Following that the decision discussed the ordinance and tax from the viewpoint of the City's general police power under its charter,

[7] 25 Words & Phrases (Perm. Ed.), pp. 217-9; Ex parte Andrews, 324 Mo. 254, 257, 23 S. W. (2d) 95, 96(1); Ploch v. St. Louis, 345 Mo. 1069, 1077(2), 138 S. W. (2d) 1020, 1023(5).

[8] 352 Mo. l. c. 239(2), 176 S. W. (2d) l. c. 501(2). See also 43 C. J. p. 195, sec. 192, p. 293, sec. 309; 44 C. J., pp. 1261-1266, secs. 4271-4278; 61 C. J. pp. 84-5, sec. 11; 51 Am. Jur. p. 92, sec. 64; 38 Am. Jur. p. 67, sec. 381; p. 69, sec. 382; p. 72, sec. 385.

[9] 352 Mo. l. c. 240-2(4-6), 176 S. W. (2d) l. c. 501-2(5, 6).

but held it would be better not to decide that question[10]—except in its relation to the State sales tax act. As to that, the opinion held the condition sought to be remedied was not one of purely *local or municipal* concern, but was a matter of State concern; and that the Legislature had not attempted to deal with it in the Sales Tax Act, nor had it delegated that power to the City. Thence the conclusion was reached that the ordinance was void.[11]

In the per curiam on motion for rehearing, at the end of the opinion, the decision held that Art. 1, Sec. 1, Par. 2 of the Kansas City charter broadly authorizing the City to "classify the subjects and objects of taxation" did not furnish a basis for the tax; and that Art. 1, Sec. 3 of the charter, providing the enumeration of particular powers should not be construed as limiting or impairing any grant of general powers therein, could not be treated as authorizing the City to impose the tax, since it was nowhere sanctioned by charter or statute, and the rule of strict construction applied to the power of taxation.

On this question of strict construction of tax laws, the per curiam in this Frogge case went still further. The appellant there (Kansas City) in its motion for rehearing had strongly urged against that view two cases: Automobile Gasoline Co. v. St. Louis, 326 Mo. 435, 32 S. W. (2d) 281, decided in 1930; and State ex rel. People's Motorbus Co. v. Blaine, 332 Mo. 582, 587(1), 58 S. W. (2d) 975, 977(1), decided in 1932. The appellants here rely on the same two decisions. So we shall discuss them as briefly as possible.

Speaking of the Automobile Gasoline case, the per curiam in the Frogge case simply said it did not consider that decision in conflict with the holding in the Frogge case. The Automobile Gasoline case involved the validity of a merchants license tax under Art. XX of the St. Louis charter. The ordinance had *sub*-classified "merchants" and levied the tax against such of them as transported gasoline in tank wagons, barrels, etc., and sold it therefrom (without having a place of business in St. Louis?) But Sec. (now) 7440, R. S. 1939-Mo. R. S. A. forbade such a tax unless the vocation was "specifically named as taxable" in the city's charter, or a statute.

The decision upheld the tax under the *general* provisions of the St. Louis charter—Art. 1, Sec. 1, Pars. 1, 2, 24 and Sec. 2, supra— and also because Art. XX thereof, authorizing license taxes, provided at the end that the long enumeration of businesses therein should not impair the power of the City to impose license taxes on *any* vocation, or "any class or any classes thereof." It may be that when the charter specifically names a vocation as being subject to license tax, the City may sub-classify and tax less than the whole number engaged in all the various branches of that vocation. See Edmonds v. St. Louis, 348

[10]352 Mo. l. c. 242-3(7), 176 S. W. (2d) l. c. 502-3.
[11]352 Mo. l. c. 243-4, 176 S. W. (2d) l. c. 503(11),

Mo. 1063, 1072(5), 156 S. W. (2d) 619, 624-5(14). That may have been what was meant by the per curiam in the Frogge case. But the Automobile Gasoline case further expressed the view that the framers of the charter thought they ''were giving to the city power to tax *any* business by the use of general language such as was used in Art. 1, Sec. 1, Pars. 1 and 24 thereof.'' In that observation we think the Automobile Gasoline case went beyond the rule of strict construction adhered to in the Frogge case, especially as to Art. 1, Sec. 1, Par. 1 of the charter, declaring the general power to *impose* different *kinds* of taxes.

The last paragraph of the per curiam in the Frogge case dealt with asserted conflict between that decision and the People's Motorbus case, supra. It quoted the following paragraph appearing in the latter decision: ''Paragraph 1 of Section 1 of Article 1 of the charter of the city of St. Louis provides that the city shall have power 'to assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation.' There can be no question but what this language of the charter is sufficiently broad to authorize the city to levy any kind of a tax which is not inhibited by some other provision of the charter or by some constitutional or statutory provision. . . .'' Of that paragraph the Frogge per curiam said: ''This statement, considered as a *basis* for the result of the case, is *overruled*. We do not rule that the result of that case was wrong, however.''

As will be seen, the Frogge per curiam did express limited disapproval of the Motorbus case. We think it overruled the quoted statement in the latter because that statement countenanced the doctrine that Art. 1, Sec. 1, Par. 1 of the charter gave the city power to impose *any* tax *not inhibited* elsewhere in the charter or by constitutional or statutory provision; whereas the doctrine of the Frogge case was that *no* tax could be imposed unless *clearly authorized* by the charter, the Constitution or a general statute. But why it did not condemn the result reached in the Motorbus case the per curiam failed to say. The Motorbus case involved the validity of an ordinance tax of 1¢ per gallon on the sale and storage of gasoline, the tax on the storage to be remitted if the sales tax was paid. In purpose and effect, it was much like the ordinance in the Frogge case. Florida decisions were cited in the Motorbus case holding a similar Florida statute was ''regulatory'' and in the nature of a ''tax upon licenses''[12]—under the police power. But toward the end the opinion held the sales tax imposed by the ordinance there was an ''occupation'' tax, and the storage tax was an ''excise'' tax. Both these are revenue taxes, not license taxes.

So the Motorbus decision squarely ruled a tax for revenue could be imposed under the abstract provisions of Art. 1, Sec. 1, Par. 1 of the St. Louis charter. That part was overruled by the Frogge per curiam.

[12]332 Mo. 587-590(2, 3), 58 S. W. (2d) 977-8 (2).

658

Perhaps the reason why it did not disagree with the ultimate result reached was that it was considered the tax might have been sustained as a license tax, as was queried in the main Frogge opinion with respect to the Kansas City use tax. We are not, of course, passing on that question here. But we agree with the Frogge case that there must be specific or clearly implied authority to tax for revenue. Not only is that the rule under the general authorities already cited (marginal note 8) : it has been so held repeatedly in this state.[13]

█ Now as to the instant case, there admittedly is no specific authorization in the statutes or the St. Louis charter for an "earnings" tax. And the General Assembly has more than once forbade *all* cities to impose certain kinds of taxes. Sec. 11454, R. S. 1939-Mo. R. S. A. does that with respect to sales taxes—which would impinge on our State sales tax. And Sec. 7440, R. S. 1939-Mo. R. S. A. since 1889 has further required a specification by statute, or in the charters of all cities, of the vocations subjected to license taxes. The General Assembly has never authorized municipalities to impose an income tax—which would diminish pro tanto the State's revenue from the State income tax—and no city has ever tried to do it so far as appears. As a basis for the proposed earnings █ tax the appellants are forced to rely here on the single abstract provision in Art. 1, Sec. 1, Par. 1 of the charter which merely provides the City may "assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation."

If that authorization alone is sufficient, the City of St. Louis needs no other sanction for *any* tax it may desire to impose. Yet the city charter does not commit itself to that view. Art. XX thereof specifically authorizes license and perhaps some excise taxes, and enumerates a great number of specified "objects" of taxation. And the statutes for years have authorized (but limited in amount) the imposition of ad valorem taxes (marginal note 4, supra). It may be inquired: if the people of St. Louis *did* really intend by their charter to give the Board of Aldermen free rein to impose any and all taxes in any amount on any and all objects of taxation, how could it have been better said than it was stated in Art. 1, Sec. 1, Par. 1 of the charter? But on the other hand, can it be believed that the people of the City when they voted for the charter in 1914 thought it would give the Board that unlimited power over them? Such a construction would have been unprecedented and contrary to the general rule of law. We hold the charter provision relied on by appellants is too indefinite to support the tax, which is novel in this State.

---

[13]State ex rel. Curators v. McReynolds, 354 Mo. 1199, 1203(1), 193 S. W. (2d) 611, 612(1); State v. Phillips Pipe Line Co., 339 Mo. 459, 466(1), 97 S. W. (2d) 109, 112(2): 302 U. S. 642, 82 L. Ed. 499, 58 S. Ct. 53; Ex parte Keane, 323 Mo. 161, 166(5), 18 S. W. (2d) 896, 898(2); Leavell v. Blades, 237 Mo. 695, 700-1, 141 S. W. 893, 894; State v. Butler, 178 Mo. 272, 311-313(6), 77 S. W. 560, 570(4, 5).

Appellants make another contention, which is stressed in both their original and reply briefs. They invoke several decisions of this court dealing with cities having special charters.[14] We need refer only to the Carpenter case. It held a municipal corporation exercises dual functions—governmental and corporate. Of the latter, the decision said: "Matters of purely municipal corporate concern a special charter may control, and it may not be amended by a special law, though it must be in harmony with the general law where it touches upon matters of State policy." A little later this further statement was made: ". . . the Legislature cannot impose upon a city taxes for that city's own special purposes, but must authorize the city to do so by general law. What it may thus empower a city organized under the general law to do, St. Louis is empowered to do under its charter. A city is given authority, *which the Legislature may not exercise for it, to impose taxes for municipal purposes.* The limitation upon the taxing power of the General Assembly in that respect goes so far and no further."

Appellants accent the words italicized above, and say they mean that in matters of purely local or municipal corporate concern, St. Louis has *exclusive* power under its charter to levy taxes, and that the General Assembly cannot forbid it—much less the courts. And they further argue that it is the *purpose* of the tax, rather than its incidence, or impact, that determines whether it is local or not. Even if that were true, the courts would still have the power to construe the Constitution, statutes, charter and ordinance provisions, and to declare the rules of construction applicable thereto.

But it is not true. As earlier stated in the Carpenter case in italics [318 Mo. l. c. 892, 2 S. W. (2d) l. c. 719], "There are many matters local to the city requiring governmental regulation, which are foreign to the scope of municipal government." The impact of the "earnings" tax contemplated by the ordinance under adjudication here would fall on nonresidents of the City who might be residents of any and every county and city of the State—and other States. And if there be now or hereafter other cities in the State with charters containing a provision as broad as Sec. 1, Art. 1, Par. 1 of the St. Louis charter, they could retaliate with a corresponding ordinance which would equally bind citizens of St. Louis and all other like cities. Certainly such ordinances would not be matters of purely local concern, from the viewpoint of the State government.

It is true that as regards the police regulations of a city, all who go there must obey them. So too, perhaps, of some excise taxes, especially if they are pseudo-regulatory and therefore partake of the po-

---

[14]State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 893-4(9, 11), 2 S. W. (2d) 713, 720(8, 11); Kansas City v. J. I. Case Threshing Machine Co., supra, 337 Mo. l. c. 926(2), 87 S. W. (2d) l. c. 202(5); Turner v. Kansas City, 354 Mo. 857, 862-4(1), 191 S. W. (2d) 612, 614-6(1, 2).

lice power. One who buys gasoline in St. Louis must pay the tax thereon, and one who purchases cigarettes must pay the stamp tax. But in general such taxes are imposed only on citizens or residents of the jurisdiction. That is true of our State income tax, Sec. 11343, R. S. 1939-Mo. R. S. A. And the tax considered in the Frogge case, supra, was imposed on the *use* of property in the City, and was evidently aimed at residents. The same was true of the tax on the *storage* of gasoline in the People's Motorbus case, supra. But in the instant case a pure revenue tax is imposed on non-residents who perform work or services within the City. We are not holding the ordinance that far invalid, but are ruling merely that it is not authorized by the abstract provisions of Art. 1, Sec. 1, Par. 1 of the charter.

As regards the Philadelphia and Toledo ordinances, and the decisions concerned with them, cited supra in marginal note 5. The Butcher case was a one-paragraph per curiam, which held the Philadelphia ordinance constitutional without giving any reason. The Dole case held it would be assumed "all constitutional questions involved" had been decided in the Butcher case. There was no discussion of the basic constitutional power of the city to impose the tax. The Zielonka case upheld a Cincinnati occupation tax on vocations, under Art. XVIII, Sec. 3, Const. Ohio, saying: "It is enough to say that the General Assembly has not expressly limited the authority of municipalities to levy an occupational tax, nor has it impliedly limited such authority by invading the field on its own account." The constitutional provision cited is as follows: "Municipalities shall have authority to exercise all powers of local self-government and to adopt within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

It will be seen the rule in Ohio is the reverse of the one in force in Missouri. All presumptions are in favor of municipalities and they can impose any tax not prohibited by general law, or preempted by a similar state tax. But under Art. X, Sec. 1, Const's Mo. 1945 and 1875 the taxing power is exercised solely by the General Assembly except when it *grants* the power to municipalities. Furthermore, Art. VI, Sec. 31, Const. Mo. 1945 continues the special charter of St. Louis "subject to changes and amendments provided by the Constitution, and with the powers . . . permitted by the Constitution or by law." And Sec. 23, Const. Mo. 1875, under which the St. Louis charter of 1914 was adopted, provided it should always be "in harmony with and subject to the Constitution and laws of Missouri." From this it is easy to see why the burden is cast on the city to establish the validity of its taxing laws.

For the reasons stated the judgment is affirmed. All concur.