STATE ex rel. Rollin F. AGARD, Director of Finance, A. G. Hays, Jr., Commissioner of Revenue, and Kansas City, Missouri, a Municipal Corporation, Relators,

v.

Honorable Henry A. RIEDERER, Judge of the Circuit Court of Jackson County, Respondent.

No. 54857.

Supreme Court of Missouri, En Banc.

Dec. 22, 1969.

Rehearing Denied Jan. 12, 1970.

Herbert C. Hoffman, City Counselor, George L. DeBitetto, Associate City Counselor, Kansas City, for petitioner-relators.

Robert Frager, Robert J. Sanders, Kansas City, for respondent.

MORGAN, Judge.

This is an original proceeding in prohibition pertaining to the taxing authority and tax enforcement responsibility of the city of Kansas City by virtue of Section 32.141(a) (3) of its ordinances.

Prior to the usual recitation of the events leading to the present controversy, for the purposes of clarity and reference, we set out the most relevant provisions of the constitution, enabling statute, charter amendment and tax imposing ordinance. (To avoid some repetition, we have italicized

those portions thought specifically applicable.)

The Constitution of Missouri, 1945, Article X, Section 1 (Taxation), V.A.M.S., provides:

"The *taxing power may be exercised* by the general assembly for state purposes, and *by* counties and other *political subdivisions under power granted to them by the general assembly for* county, *municipal* and other corporate *purposes.*"

One of the taxing powers granted or delegated to Kansas City is found in Section 92.210, RSMo 1959, V.A.M.S. (Laws of Missouri, 1963, page 152, Sec. 1.) It provides:

"Any constitutional charter *city* in this state which now has or may hereafter acquire a population of more than four hundred fifty thousand but less than seven hundred thousand inhabitants, according to the last federal decennial census, *is hereby authorized to levy and collect,* by ordinance for general revenue purposes, *an earnings tax* on the salaries, wages, commissions and other compensation earned by its residents; on the salaries, wages, commissions and other compensation earned by nonresidents of the city for work done or services performed or rendered in the city; on the net profits of associations, businesses or other activities conducted by residents; on the net profits of associations, businesses or other activities conducted in the city by nonresidents; and on the net profits earned by all corporations as the result of work done or services performed or rendered and business or other activities conducted in the city."

Section 92.300 of the enabling act required a favorable vote of the qualified voters of the city, to amend the city charter, prior to the imposition of such a tax. After such an election, ordinances to levy and collect the tax were adopted. Ordinance Section 32.141 provided:

"Sec. 32.141.  Imposition of tax.

(a) Rate, scope. A tax for general revenue purposes of one-half of one percentum (0.5%) per annum is hereby imposed.

(1) On all salaries, wages, commissions and other compensation *earned* or received by resident individuals of the city for work done or services performed or rendered.

(2) On all salaries, wages, commissions and other compensation *earned* or received by nonresident individuals of the city for work done or services performed or rendered in the city.

(3) On the net profits of all unincorporated businesses, associations, professions or other activities conducted by a resident or residents of the city.

(4) On the net profits *earned* by all unincorporated businesses, associations, professions or other other activities conducted in the city by a nonresident or nonresidents.

(5) On the net profits of all corporations *earned* as a result of work done or services performed or rendered or business or other activities conducted in the city.

(b) Activities not taxable as entity. *For the purposes of paragraphs* (3) *and* (4) *of subsection* (a), an unincorporated . business, association or other activity shall not be taxable as an entity, but any member thereof who is a resident of the city shall be taxed individually on his entire distributive share of the annual profits thereof, and any nonresident member shall be taxed individually only on that portion of his distributive share of an annual profits thereof which is derived by the unincorporated business, association or other activity from

*work done, services performed or rendered,* and *business or other activities conducted* in the city."

Briefly, a resident taxpayer, relator below, alleged, "\* \* \* that residents of this city are taxed by (Ordinance) Section 32.141(3) on all income and the net profits received therefrom \* \* \*" It was charged that the tax was not being imposed by the city on such income as rentals, interest, dividends, gains from real estate sales (other than the taxpayer's residence) and net gains from the sale of stocks. In the trial court, the taxpayer sought a writ of mandamus to compel the city to enforce and collect the tax without any distinction between what has become generally referred to as "earned" or "unearned" income. The trial court submitted a memorandum and suggested judgment entry to the parties, wherein it was found that the city has "\* \* \* no authority to administratively exempt or exclude *any income* from net profit accruing to a resident or residents of the city." (emphasis added.) The city, relator here, asks that this court prohibit the entry of that judgment.

The taxpayer's arguments are generally encompassed in this statement: "The initial and controlling fact is that the word 'earned' *does not* appear in said Section 32.141(a) (3) of said ordinance and no power of discretion is reserved for exercise by the Commissioner of Revenue. He must apply the tax provided by Section 32.141(a) (3) as to all income subject to taxation under Missouri's income tax law. His guideline for the performance of his duty is clear and simple and no reason appears for his insistence upon avoidance of that duty by reference to an invented and obviously imaginary limitation on the applicable scope of Section 32.141(a) (3)."

The city submits that, "\* \* \* the primary authority for the Kansas City Earnings and Profit Tax Ordinance is the Enabling Act, Section 92.210 \* \* \* that regardless of how broad the provisions of the Earnings Tax Ordinance be, it cannot

provide to the petitioners (the city) any greater taxing authority or power than is provided in the Enabling Act." With this, the taxpayer must and does agree. The city further argues that the enabling act for Kansas City, Section 92.210, is practically identical to the enabling act for St. Louis, Section 92.110, and that the city is bound by and is seeking to comply with decisions of this court concerning the scope of the comparable tax in St. Louis. The arguments require some reference to the conclusions reached in those cases.

■ In Carter Carburetor Corporation v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438, an ordinance, very similar not only to that now questioned but also to the statutory enabling acts applicable to both Kansas City and St. Louis, was considered. (The ordinance is set out in full at loc. cit. 440.) St. Louis had passed this ordinance without the authority of any enabling act and it was found invalid for that reason. Prior to reaching this conclusion, however, this court declared: "In our opinion it is a species of income or excise tax. However, it is limited to earnings from work and services, and does not include other kinds of income such as interest on investments, rents, dividends, capital gains and the like." The decision was bottomed on the principle, which continues to be our guide, that the power to tax is an extraordinary one and must be based on specific or clearly implied authority. Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498.

Subsequent to the opinion in *Carter Carburetor Corporation,* the general assembly passed an enabling act applicable only, because of population limitations, to the city of St. Louis. The constitutionality of the resulting ordinance was upheld in Walters v. City of St. Louis, 364 Mo. 56, 259 S.W. 2d 377, affirmed 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660. See also Lawyers' Association of St. Louis v. City of St. Louis, Mo. App., 294 S.W.2d 676.

A later attack on the constitutionality of such legislation was considered in Barhorst

v. City of St. Louis, Mo., 423 S.W.2d 843. The primary contention was that a legislative body could not select "earned income" as a subject for taxation to the exclusion of "unearned income." This argument was denied. While considering the question this court did state that, "Neither the *enabling act*, the Charter provision, nor the ordinance authorizes the imposition of an earning tax on what has been termed 'unearned income.'" (emphasis added.) As to that particular tax imposing ordinance, it should be pointed out that the word "earned" was used in the subsection comparable to that now being considered.

If the last quoted finding in *Barhorst* and the comparable conclusion in *Carter Carburetor Corporation* are correct, the taxpayer's position can not be sustained. This is true because *Barhorst* considered the enabling act for St. Louis which, for purposes of interest here, was in words identical with the enabling act now applicable to Kansas City, and in *Carter Carburetor Corporation* consideration was being given to an ordinance of St. Louis which had the word "earned" in that subsection comparable to Ordinance Section 32.141(a) (3) but not in that comparable to subsection (a) (4). This is significant because the taxpayer here submits that the pending suit "* * * is concerned *only* with the narrow issue of the legal implications resulting from the omission of the word 'earned' from Ordinance Section 32.141(a) (3)."

Necessarily, the determination of that precise issue can not, in any event, aid the taxpayer's case unless the city had the delegated power to enforce, as against those taxpayers falling in the category specifically described in subsection (a) (3) of the ordinance, what would be considered as an "income tax" with no consideration being given to whether such income was "earned" or not. The taxpayer assumes the city had this power when he argues: "It is also undisputed and indisputable that the legislature did *not* choose to so limit its delegation of authority. Quite to the con-

trary, it affirmatively evidenced its intent that all income of residents of both St. Louis and Kansas City made lawfully subject to levy under the provisions of Missouri's income tax laws, Chapter 143, Missouri Revised Statutes, 1959, as amended, could be also lawfully made subject to a tax levy by St. Louis and Kansas City." This conclusion of the taxpayer as to the legislative intent of the general assembly is justified in part, by him, by virtue of the enabling act excluding the tax in question from being imposed on that income received from sources listed in statutory sections 143.120 to 143.150, which are also excluded from the state income tax, and he bases this contention on the general rule of construction that specific mention of one thing implies the exclusion of others not so mentioned. This rule of construction is not relevant to the initial problem of determining what power was in fact delegated to the city.

It is only fair to point out that from a reading of the cited cases, it is not apparent that the precise argument here made was considered, and that perhaps all parties concerned had assumed that nothing but a tax on "earnings" was involved. For this reason we direct our attention to the enabling act, Section 92.210, because the parties do agree that the exercise of delegated legislative authority must be strictly confined to the authority granted. In so doing, we recognize: "The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration." Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, 925. American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A.L.R. 798.

Starting from the premise that, "The General Assembly has never authorized municipalities to impose an income tax

* * * and no city has ever tried to do it so far as appears," *Carter Carburetor Corporation,* loc. cit. 443, we seek to find the controlling legislative intent in passing Section 92.210; having in mind the ultimate objective of answering the question— may Kansas City levy an income tax on the net profits (regardless of the source) of associations, businesses or other activities conducted by residents?

■ We look first to the taxpayer's argument that, "It is important to note and bear in mind that Section 92.210 * * * is titled 'Tax may be levied on earnings *and profits* (Kansas City)' (emphasis supplied) * * *" This wording is found on page 39 of the pocket part to Volume 7, V.A.M.S. (for use in 1969–1970) and is not the official title to the act. The "title," designated by the general assembly, is fully quoted following the statute itself on pages 39 and 40 and uses the same wording as the statute. "The headings of chapters, articles, or sections are not to be considered in construing our statutes; these indicia are mere arbitrary designations inserted for convenience of reference by clerks or revisors, who have no legislative authority, and are therefore powerless to lessen or expand the letter or meaning of the law." State v. Maurer et al., 255 Mo. 152, 164 S.W. 551, 552. The captioned words quoted by the taxpayer are not to be considered as they fall into that category just described. Of course, if necessary, consideration may be given to the official title of a legislative enactment. In Re Graves, 325 Mo. 888, 30 S.W.2d 149, 152.

■ In view of the statute being composed of one extended sentence, a grammatical problem pertaining to the syntax thereof is presented. It provides that the city " * * * is hereby authorized to levy and collect * * * an *earnings tax* * * *" (emphasis added.) The obvious question then is—upon whom may it be imposed? First, "on the *salaries, wages, commissions* and other *compensation* earned by its residents." (italics added.) Each of the descriptive words used is consistent with the word "earnings." Second, after using the same descriptive words as to nonresidents, their taxable earnings are limited to that portion received "for *work done* or *services performed* or *rendered* in the city." (italics added.) From the words used, it is obvious the legislative intent was to limit the tax base to "earnings." Third, after the second semicolon, the sentence continues with the words "on the net profits of associations, businesses or other activities conducted by residents." The last quoted words do not comprise a sentence and create a specific inquiry as to what tax can be imposed on the taxpayers therein described. As is readily apparent, the one and only tax mentioned in the entire sentence is "an earnings tax." It is the only tax the statute purports to authorize. Fourth, the similar provision as to nonresidents merely limits their tax base to net profits of unincorporated groups which were created in the city. Fifth, as to all corporations, the tax is imposed on the "net profits earned * * * as the result of *work done* or *services performed* or *rendered* and *business* or *other activities* conducted in the city." (italics added.) Again, those words italicized are consistent with the concept of "earned income" as distinguished from "unearned income." Additionally, such words would have been surplusage if the only objective was to limit the taxable "net profit" to that created in the city. Such emphasis, as shown by the words used, clearly indicates a legislative intent to limit the taxing power delegated to a tax on earnings irrespective of whether the recipient be an individual, unincorporated group or a corporation. Section 92.240 defines "net profits," as the term is used in the act, and it makes no distinction between unincorporated groups and corporations.

To accept the construction sought by the taxpayer, we would have to conclude that for the first time in the history of this state, the general assembly did authorize a city to impose an income tax, but camou-

flaged the authority between semicolons in the middle of a statute providing an earnings tax on all but those identified between the semicolons. Such a conclusion is not justified, and we refuse to place such an illogical interpretation on the statute as written. As the city suggests, doing so would create a challenging question as to the statute violating the equal protection clause of the Fourteenth Amendment to the United States Constitution, for the reason, "The character of the owner (would be) the sole fact on which the distinction was made to depend." Quaker City Cab Company v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927.

Another example where some portion of income has been the subject of a special tax may be found in the Intangible Personal Property Tax, Chapter 146, V.A.M.S.

In view of our construction of the enabling act, it is somewhat immaterial what implications might possibly be drawn from the wording of the ordinance, in so far as it is contended the city had taxing powers not delegated to it. However, in reviewing the tax imposing ordinance, we find it generally consistent with the enabling act. The word "earned" was added to what is now identified as subsection (a) (4) of Ordinance 32.141, and it was not used in the comparable clause of the enabling act. To us it appears to have been added for one reason only, and that was to limit the tax obligation of nonresidents. Perhaps it would have been more clear to have said "earned in the city" than to have placed the added word "earned" after net profits. This, because "net profits" needed no additional clarification in view of the definition given in Ordinance Section 32.-140, which is *"Net Profits:* The net gain from the *operation* of a business, profession or enterprise, incorporated or unincorporated * * *"* (emphasis added.) We add, too, that the use of the word "operation" is consistent with an earnings tax. As seen by subparagraph (b) of Ordinance

Section 32.141, the city added an explanatory note further indicating an effort to limit the tax base to earned income. For example, we find nothing in the ordinances indicating that a resident partner would be accountable for a different "net profit" tax base than his nonresident partner. The only difference in tax obligation would result from *where* the income came and not from *what* income the partnership had.

In answer to the original question, created by the issue submitted, we find no legal significance from the omission of the word "earned" from subsection (a) (3) or its addition to subsection (a) (4) of Ordinance Section 32.141.

We agree with the city that it is difficult, in certain instances, to distinguish between "earned" income and "unearned" income. The latter may become earned income if received for work done, services performed or rendered, or business or other activities conducted by the taxpayer. Activity is defined by Webster's Third New International Dictionary (Unabridged), 1968, as an occupation or pursuit in which a person is active. Such a determination can be resolved only after consideration is given to all available facts and information pertinent to the particular individual taxpayer.

█ Prohibition is the proper remedy. Dahlberg v. Fisse, 328 Mo. 213, 40 S.W.2d 606, 610.

The preliminary rule, heretofore issued, is made absolute.

HENLEY, C. J., FINCH, DONNELLY and HOLMAN, JJ., and SHANGLER, Special Judge, concur.

SEILER, J., concurs in result.

STORCKMAN, J., not sitting.